## GILLETTE SAFETY RAZOR CO. v. STANDARD SAFETY RAZOR CORPORATION.*
### No. 2233.

District Court, D. Connecticut.
Dec. 8, 1932.

*For opinion reversing decree, see 64 F.(2d) 6.

See also (D. C.) 2 F. Supp. 53.

George P. Dike, of Boston, Mass., and Henry F. Parmelee, of New Haven, Conn., for plaintiff.

George E. Middleton, of New York City, and Bristol & White, of New Haven, Conn., for defendant.

THOMAS, District Judge.

This is an infringement suit involving the Thompson patent, No. 1,815,745, for improvements in safety razors, issued July 21, 1931, to the plaintiff as assignee, on an application filed December 3, 1930, which was a division of the original application filed April 25, 1929, Serial No. 358,114.

The bill charges defendant with infringement as to certain safety razor blades made and sold by the defendant and seeks the usual injunction, accounting, and damages. The plaintiff charges contributory infringement of claims 1, 2, 4, 5, 7, and 8 of the patent in suit.

Following the decision rendered by this court in Gillette Safety Razor Co. v. Hawley Hardware Co., 60 F.(2d) 1019, where the same patent was found valid and infringed, plaintiff brought on its motion for preliminary injunction in the instant case, and after oral arguments and informal discussion by counsel and court on the motion, and when the court indicated that an early trial and decision was possible, the plaintiff withdrew its motion for a preliminary injunction, so the case is here now on pleadings and proofs.

As already noted, the Thompson patent in suit was sustained by this court in the Hawley Case, supra, and the same claims are in suit here as were before the court there.

Defendant stipulates that the Rio and Norwalk blades here in evidence were made and sold by the defendant with the intent that they should be used in all types of Gillette razors with the limitation that they would be used as replacement blades only and not as blades sold with the new Gillette razors. Defendant asserts that the showing in the Hawley Case was incomplete and that the decision there cannot control here on the ground that it has come before this court on a new record, presented new testimony not before the court in the Hawley Case as well as new arguments not heretofore advanced. Except for four points raised by defendant, the record in this case is for all practical purposes the same as the record in the Hawley Case. These points are:

1. Defendant's new theory of the invention of the patent in suit;

2. Certain prior art not appearing in the Hawley Case;

3. Defendant's additional argument on the scope of Wilson v. Simpson [9 How. 109, 13 L. Ed. 66];

4. That the Gillette blades are not marked with the number of the patent.

1. Defendant asserts that the invention of the patent in suit consisted only in putting reinforcing lugs on the cap corners of the razor; that the cutting out of corners of the blade was a mere incident to reinforcing the cap corners; and that reinforcing the cap corners was an obvious mechanical expedient which is within the province of the skilled mechanic and does not rise to the dignity of invention.

Whether Thompson made his invention while asleep or awake is immaterial, provided the invention is new and useful. I shall treat the question of novelty when discussing the prior art relied upon by defendant. There is nothing in this record which persuades me to change the findings of fact and conclusions of law stated in the Hawley Case on the question of the inventive act and the usefulness of the invention. Whether or not Thompson was the first and only person to realize that the two defects of the previous Gillette razor, viz., poor shaving and blade breakage, were the result of apparently minor injuries to the cap corners, is immaterial as far as the issue is concerned, as it appears to my satisfaction that Thompson solved this long-standing problem by making two slight changes in the razor: First, he cut out the corners of the blade so that any injury to the corners of the cap would not spring the blade out of shape and thus force the edge out of proper shaving position or cause the corners of the blade to break off. Second, he reinforced the corners of the cap by building up a lug on the

underside of each corner which fills in the cut-out corners of the blade to protect the blade and prevent injury to the cap corners.

The mere fact that, speaking generally, it is not invention to reinforce a weak portion in order to make it stronger, is not applicable here because, as I see it, the invention did not consist solely in placing reinforcing lugs on the cap corners, nor is it indication of non-invention that the device should seem obvious after it has been discovered, nor does its simplicity detract from its merits. Many inventions are of this character, and the reason why the ordinary man does not discover them, although they are so plain when some one else has discovered the difficulties and overcome them, is that habit has limited his power to see what he has not been accustomed to see and his selective attention is bound fast by his past experience. If a skilled mechanic is given the conception and the idea, it is quite likely that he will get the result and bring forth an invention; but that is not the correct point of view or the correct rule to apply to the matter in hand. We must look at the situation as it existed prior to the conception which suggested or promoted the beneficial mechanical arrangement. The mechanical problem of adopting the means is not the inventor's whole case. The question of the invention involves a broader problem than that relating to the mechanical means. The inventive idea was not so much in the arrangement of mechanical means as in appreciating the difficulties and necessities and in conceiving and pointing out how to deal favorably and beneficially with the forces involved.

### The Prior Art.

2. The references urged by the defendant are Brosius, No. 810,709; Kastor, No. 888,-019; Carreras, No. 1,000,235; Wrede, No. 1,203,089; Ballreich, No. 1,246,219; Marchese Canadian patent, No. 173,126; Benn, No. 1,308,730; and Gaisman Australian patent, No. 1,346 of 1926.

The patents to Kastor, Ballreich, Marchese and Benn were considered by the Patent Office examiner during the prosecution of the application of which the application which resulted in the patent in suit is a division (see file wrapper of parent application), and the Carreras and Ballreich patents were relied upon in the Hawley Case. I find nothing here which prompts me to change the conclusions expressed with reference to the Carreras and Ballreich patents and as set forth in the Hawley Case.

Brosius, No. 810,709, illustrates and de-

scribes a two-edged razor blade having at each end of each of its cutting edges a thickened portion 6 to prevent "nicking or breaking" of the ends of the cutting edges of the blade. This blade has no cut-out corners, nor has the Brosius razor lugs on its cap corners to be received by cut-out portions of the blade for the purpose described and claimed in the Thompson patent. That thickening the end of a cutting edge of a blade is not a mechanical equivalent to the cutting out of the corner of a blade is entirely too obvious to need further discussion. Brosius thickened the blade corners to prevent nicking or breaking the razor blade when it comes into contact with the razor stops on the front of the razor shield 3 of the Brosius structure. The Brosius device lacks an element corresponding to the cap member of the Thompson razor, and so does not and cannot suggest the Thompson invention.

Kastor, No. 888,019, shows a four-edged blade having triangular cut-out corner portions into which are fitted triangular lugs on the cap member for positioning purposes; the said lugs extending into triangular notches in the guard member. The edges of the cap are shorter than those of the blade and consequently cannot protect the ends of the cutting edges of the latter. The lugs on the cap have sharp edges coinciding with the corners of the cap, and therefore cannot effectively protect the cap corners from injury when accidentally dropped. In Plaintiff's Exhibit #26, which is a model of the Kastor razor, one cap corner has been slightly damaged and it clearly appears that the edge of the blade on each side of this corner does not lie in a straight line. As it is one of the objects of the Thompson patent in suit to insure an even edge exposure of the blade by preventing deformation of the cap corners, it is obvious that the Kastor patent does not anticipate Thompson's invention. It is not an appropriate reference for the additional reasons above given.

Wrede, No. 1,203,089, discloses a razor blade "provided with projecting ends 28 to rest upon the projections 20" of the guard member 18. With the projecting ends 28 of the blade and the projections 20 of the guard member co-operate lugs 24 on the cap member to insure the proper positioning of the blade in relation to the cap and guard. From this it appears that the lugs 24 on the cap corners of the Wrede device are blade positioning means, in contradistinction to the lugs on the Thompson cap which are cap and blade corner protecting means. It also appears

that when the Wrede blade is clamped between the cap and guard members of the razor, it is bent in a direction opposite to the one in which the Gillette blade is flexed by the corresponding razor elements. When increased pressure is exerted on the Wrede blade, it springs the blade toward the cap member, increasing the amount of edge exposure. The blade does not abut against the edges of the cap and is not supported by the cap edges. Consequently, if a corner of the Wrede cap is bent forward or deformed, the blade will not be broken or distorted. It is clear, therefore, that Wrede was not called upon to solve Thompson's problem because Wrede was never confronted with it and so was not acquainted with it.

Marchese Canadian patent, No. 173,126, describes a blade having a projection 9 on each end to fit recesses 7 at each end of the guard member 2 and by which the blade is positioned with relation to the guard. The blade edges have the same length as the cap edges so that the blade is not protected by the cap. If one of the cap corners is damaged as it is in Plaintiff's Exhibit No. 28, the model of the Marchese razor, the blade is no longer straight but is bent out of position by the damaged cap corner when the razor is assembled so that the razor shaves poorly. Injuries to the cap corners of the Marchese razor have the same effect as injuries to cap corners of the old Gillette razor.

Benn, No. 1,308,730, discloses a blade having projections 15 at its ends "to facilitate handling of the blade in assembling the same." While recesses are formed in the blade corners, these recesses do not co-operate with the razor cap. As a matter of fact, the drawings clearly disclose that if the cap corner of the Benn device is bent, the recesses would not prevent the blade from being distorted. Consequently it must be held that the Benn construction does not suggest the Thompson invention.

Gaisman Australian patent, No. 1,346 of 1926, shows in Fig. 1 a razor of the Gillette type in which the blade is curved at its ends so that the cap corners project beyond the blade structure. Defendant contends that a burr forming on the end of the Gaisman cap would not interfere with the Gaisman blade. This would be so in case the burr should be of a depth less than the thickness of the blade. If the burr is higher, the cap edge will be unevenly spaced from the blade with a consequent uneven blade exposure. The Gaisman patent does not suggest reinforcing lugs on the cap corners, nor does it suggest means for accommodating in the guard member such reinforcing cap lugs. In addition, it will be noted that the Gaisman patent relied upon by the defendant is a foreign patent. It does not describe or even hint at the co-operation of a blade corner and a cap corner. Courts are very reluctant to find anticipation in earlier descriptions unless it is completely and precisely stated. The Gaisman specification does not give in substance the same knowledge and the same instruction as the specification of the patent in suit, and on the evidence in this case read in the light of the rules of law applicable to anticipation, I do not find the invention of the patent in suit anticipated by the Gaisman Australian patent.

I conclude that the rules of law laid down in the Hawley Case as to anticipation and novelty apply to the instant case with equal force, and that the prior art relied upon by this defendant does not constitute anticipation of the invention disclosed and claimed in the patent in suit.

Defendant has reviewed at considerable length the history of the early Gillette patents long since expired and charges that plaintiff is now seeking to revive the monopoly it enjoyed under its early patents. The answer to such an assertion is that the plaintiff's monopoly under its early and expired patents could only be revived in the event that our patent laws permitted the extension of the life of a patent. It is not contended by defendant that plaintiff has made application for the extension of the term of its earlier patents. Nor am I persuaded by defendant's argument that plaintiff, having enjoyed its monopoly for so many years, should now be content to sit idly by and watch competitors, who have made no invention but simply copied plaintiff's article, take away the business rightfully belonging to the plaintiff which by earnest endeavor has been built up over a period of many years and which it seeks to improve with advancing patents which in a certain sense inure to the benefit of the public. There is nothing in our patent law which prevents any one from making improvements on an existing structure and obtaining a patent therefor if he otherwise complies with the law in such case made and provided. It appears from the record that the patent in suit was obtained after due proceedings first had in the Patent Office, and I concur with the examiner that the invention described by Thompson was and is new and useful and that the claims relied upon are not anticipated by the prior art.

68

Defendant further asserts that the invention shown in the Thompson patent was made to prevent others from fitting the Gillette razors with blades of their own make. Assuming it to be true, such a contention cannot be seriously considered by a court of equity. What defendant is really complaining about is the fact that Thompson invented a razor construction which was found to be patentable and so precludes the defendant from cutting into the plaintiff's business. Indeed, this may be quite detrimental to the defendant's business, but it in no way contravenes the patent laws of the United States.

The defendant practically admits in the affidavits filed on the preliminary injunction proceedings that, because it did not make razors of its own, it was forced to adopt its Rio and Norwalk blades in order to be in a position to compete with the plaintiff for the blade business and that it has adopted its blade construction on advice of counsel. I find that there is no evidence in this case of any originality on the part of the defendant in the razor field or in the structure of its blades. From defendant's admissions it is perfectly apparent that it bodily adopted the Thompson invention because it needed the same and because it had to have its Rio and Norwalk blades with the Thompson invention embodied therein. So, in order to justify this conduct, defendant charges plaintiff with an extension of a monopoly as though it were an illegal act, and disputes the novelty and the value of Thompson's invention and relies upon a number of prior patents. It must be noted that the razor art is a crowded one, and though it is obvious that all of the prior art is open to the defendant, yet it uses the Thompson invention. On the one hand, it gives the tribute of its praise to the prior art, but on the other hand it gives the Thompson patent the tribute of its imitation. The principle of law found in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527, is particularly apposite to defendant's claims and conduct. On page 440 of 220 U. S., 31 S. Ct. 444, 450 Mr. Justice McKenna said: "The utility of the Grant patent, therefore, was not attained in the Willoughby patent. The rubber company's conduct is confirmation of this. It uses the Grant tire, as we shall presently see, not the Willoughby tires. Let it be granted that they afforded suggestions to Grant, and that he has gone but one step beyond them. It is conceded, as we have said, that his invention is a narrow one,—a step beyond the prior art,—built upon it, it may be, and only an improvement upon it. Its legal eva-

sion may be the easier (Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053, 1054), and hence we see the strength of the concession to its advance beyond the prior art and of its novelty and utility by the rubber company's imitation of it. The prior art was open to the rubber company. That 'art was crowded,' it says, 'with numerous prototypes and predecessors' of the Grant tire, and they, it is insisted, possessed all of the qualities which the dreams of experts attributed to the Grant tire. And yet the rubber company uses the Grant tire. It gives the tribute of its praise to the prior art; it gives the Grant tire the tribute of its imitation as others have done. And yet the narrowness of the claims seemed to make legal evasion easy. Why, then, was there not evasion by a variation of the details of the patented arrangement? Business interests urged to it as much as to infringement. We can find no answer except that given by the tire company: 'The patented organization must be one that is essential. Its use in the precise form described and shown in the patent must be inevitably necessary.'"

And in Fones v. American Specialty Co., 38 F.(2d) 639, this court said, page 642: "Even if there were doubt as to the patentability of the Connecticut Company's switch, the commercial utility thereof would furnish ample testimony as to its patentability. In addition, the defendants have given the tribute of their imitation to the patented switch, defendant's device being, as above stated, a Chinese copy of the Cavanagh construction. The failure of the defendant to avail itself of the earlier devices or improve them, and the bodily appropriation of the patented structure, is most persuasive upon the question of patentability. General Electric Co. v. Wagner Electric Mfg. Co. (C. C. A.) 130 F. 772. The imitation of the thing patented by a defendant, who denies invention, has often been regarded, especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think of it. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277."

And Judge Townsend, in General Electric Co. v. Wagner Electric Manufacturing Co. (C. C. A. 2d Circuit) 130 F. 772, said on page 778: "The failure of defendants to avail themselves of said earlier devices or improve them, and their bodily appropriation of the patented construction, is most persuasive upon the question of invention."

And Judge Woolsey, in Anderson & Writer Corporation v. Hanky Beret, Inc (D. C.)

36 F.(2d) 412, in referring to defendant's conduct said on page 414: "It certainly does not lie in his mouth, or in the mouth of Stafford, to dispute the novelty and value of the plaintiff's invention when together they have paid to it the two sincerest compliments which man can pay—larceny and imitation."

And finally Judge Campbell, in Skelton v. Igoe Bros. (D. C.) 29 F.(2d) 837, page 840, expressed the same thought in the following language: "No one, it seems to me, pays a higher tribute to the handle of the patent in suit than the defendant, for, with all the much lauded prior art at its command, it offers the sincerest form of flattery—imitation."

In the case at bar the Rio and Norwalk blades manufactured and sold by the defendant are imitations of the Thompson blade, and the decisions above quoted are controlling here.

3. I find nothing in this record which prompts me to change the conclusions reached and stated in the Hawley Case, supra, on the question of contributory infringement. As a matter of fact, I find that the evidence adduced by the plaintiff on this point is even more convincing than was the evidence in the Hawley Case. I refer particularly to the testimony of the witnesses Frissell and Becher, both connected with manufacturers of razor blade stropping devices. Defendant has introduced testimony of a single witness in a futile attempt to rebut the testimony of plaintiff's witnesses and relies on arguments only with reference to the law laid down in Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66. These arguments are far from convincing and do not change my view of this case and the decision in the Hawley Case on this point.

Defendant also raises and stresses the point that plaintiff's conduct proves that it is against re-sharpening and re-conditioning its razor blades and calls attention to the fact that plaintiff's blades are marked. "No honing—no stropping." From the evidence it is clear that plaintiff discontinued printing the legend, "No honing—no stropping," on its blades with the advent of the Thompson blade of the patent in suit. Whatever may have been the conduct and policy of the plaintiff prior to the invention claimed in the patent in suit is immaterial as far as the issue here is concerned, just as much as it is immaterial what the conduct and policy of the defendant was prior to its infringement of the patent in suit.

Nor is the situation in any way affected by statements in the early Gillette patent, No. 775,134, or subsequent patents of plaintiff with reference to the intended life of a razor blade or any other statement, because such statements were made prior to Thompson's invention. Nor are any statements by plaintiff's officers regarding its policy of the blade renewal business of its razor frames in point.

4. The question of marking plaintiff's razor blades is one that properly belongs to the master who may be appointed to take an account in these proceedings. On the other hand, I find that plaintiff has marked the packages containing its razor with the number of the patent in suit (Plaintiff's Exhibit No. 10), which is all the statute (35 USCA § 49) requires. The claims relied upon by plaintiff all specify a combination which it appears is sold in a package properly marked. No authority has been called to my attention which holds that each element of a patented combination must bear the patent marking.

### Recapitulation.

The matters to be determined in this case may be epitomized in two questions. They are:

1. Is the Thompson patent valid?

2. Are the Rio and Norwalk blades of defendant's manufacture contributory infringements of the claims relied upon in the Thompson patent?

For the reasons given and upon the authorities cited supra, as well as those cited and quoted from in the Hawley Case, it follows that both questions are answered in the affirmative.

Having thus expressed my conclusions, it follows that claims 1, 2, 4, 5, 7, and 8 of the Thompson patent relied upon as covering defendant's blades are valid and infringed. It necessarily follows that there may be a decree for the plaintiff in accordance with the prayer for relief, together with costs to abide the event.

Submit decree accordingly properly consented to as to form.