**TRUSSELL MFG. CO. v. WILSON–JONES CO.**

No. 353.

Circuit Court of Appeals, Second Circuit.

June 29, 1931.

Duell, Dunn & Anderson, of New York City (Charles W. Hills and Charles W. Hills, Jr., both of Chicago, Ill., C. Earl Hovey, of Kansas City, Mo., and Alexander C. Mabee, of Chicago, Ill., of counsel), for appellant.

Fraser, Myers & Manley, of New York City (Arthur C. Fraser and Louis E. Giles, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Both parties are manufacturers of loose-leaf devices, including loose-leaf binders of the ring type, in which the leaves are held in the binder by means of rings that are capable of being opened and closed and extend, when closed, through perforations in the marginal edges of the leaves. The patent in suit relates to a loose-leaf binder of the ring type, but the particular claims in litigation, claims 6, 7, and 8, have to do only with the cover and back-plate of the binder. Claim 6 reads as follows: "6. In a binder, a flexible cover having its back portion split on its inner side to form flaps, and a metal back plate inserted in such split portion, and the flaps fastened down against it to embed it in such back portion." Claim 7 differs only in requiring that the metal back-plate inserted in the split portion of the cover be "cemented therein." Claim 8 describes the same structure but specifies that the back portion of the cover be so split as "to form flaps of tapering thickness." The construction is described in the specifications, with references to the drawings, as follows:

"The book back A' is of novel construction. The leather sheet is slitted from the middle toward the sides to form flaps ii (Fig. 12). These flaps are turned up and the metal back plate G (Fig. 8) which is suitably curved, is inserted beneath them and cemented both to the integral back portion J and on its upper side to the flaps ii. It thus forms a stiffening plate embedded in the leather of the book back. Its upturned end portions form ears hh. To fasten the book back thus formed to the ring mechanism, it is only necessary to bring the parts together and turn down the ears hh over the ends of the sheath plate F." Page 2, lines 69–83.

Infringement of the patent, if the claims in suit be valid, is admitted; but their validity is questioned on the ground of anticipation in the prior art and as involving nothing more than mechanical skill.

The advance which the patentee claims to have made over the prior art in respect to the cover of a loose-leaf binder is the idea of using a single sheet of flexible material (leather) and embedding therein between its inner and outer surfaces at the proper location to constitute the back of the binder a metal plate, to which can be fastened the ring mechanism for holding the loose leaves. This is said to produce a binder stronger, more durable, and of neater appearance than had previously been known with the old form of cover built up from several layers of material.

The appellant argues that the claims in suit are not limited to a structure in which the cover and back are integral, but are broad enough to include the old "built-up" type of cover. This contention cannot prevail. Not only do the specifications provide, "This cover may as heretofore be constructed of a single integral sheet of leather or other suitable material, so that the sides or flaps of the book back A' are all made of one sheet," but the claims themselves, in specifying a cover "having its back portion split on its inner side to form flaps," with a metal back-plate

inserted "in such split portion," implicitly demand a single integral sheet of cover material.

■ Again, attack is made upon the claims as being of a hybrid character, neither for a product nor for a process, but an attempt to define the article by the method of its manufacture. This contention must also fail. The claims are for an article of manufacture, not for a process; and it is true, of course, that an old article cannot be patented by claiming it as the product of a new process. American Tube Works v. Bridgewater Iron Co., 132 F. 16 (C. C. A. 1); Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 311, 4 S. Ct. 455, 28 L. Ed. 433. But, if the article is new, it may be patented, and the claim will not be invalidated merely because it describes the article with some reference to the method of producing it. Dunn Wire-Cut Lug Brick Co. v. Toronto Fire Clay Co., 259 F. 258, 260 (C. C. A. 6); Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

■ The defense of anticipation by the prior art was considered by the court below in a characteristically careful and thorough opinion. Little need be added on this phase of the case. Concededly the best reference is the patent to F. Von Schlegel, issued in 1908. It is urged that this shows a binder having a back-plate embedded in flaps of the cover which must have been slitted or skived to receive it. But this contention depends altogether upon the drawings and the hatchings which they show. We need not say that never in any circumstances could drawings alone be enough to prove an anticipation, though the language used in some of the cases might seem to go so far. See A. R. Mosler & Co. v. Lurie, 209 F. 364, 366 (C. C. A. 2); Gray Telephone Pay Station Co. v. Baird Mfg. Co., 174 F. 417, 421 (C. C. A. 7). But even if drawings may at times be enough, the rule is perfectly settled, and it is a useful one, that to be an anticipation the disclosure must be clear. Atlantic Gulf & Pac. Co. v. Wood, 288 F. 148, 155 (C. C. A. 5); Skelly Oil Co. v. Universal Oil Products Co., 31 F.(2d) 427, 431 (C. C. A. 3); Canda v. Mich. Malleable Iron Co., 124 F. 486, 492 (C. C. A. 6). Von Schlegel's patent does not meet this requirement. It is pure conjecture, and that merely from the drawings without the aid of any text, whether Von Schlegel meant what Trussell later disclosed, or meant only the familiar built-up type of cover.

This is equally true of the German patent to Gebruder Friedrichs, which was not pleaded as a technical anticipation, but was offered in evidence to show the state of the art. The construction of this cover and back is even more difficult to conjecture than is Von Schlegel's. This disclosure is not sufficiently clear to satisfy the rule already mentioned. Indeed, it has been urged that that rule must be applied more strictly to foreign than to domestic patents. Much may be found in the books which seems to support such a distinction. See Seymour v. Osborne, 11 Wall. 516, 555, 20 L. Ed. 33; Hanifen v. E. H. Godshalk Co., 84 F. 649, 651 (C. C. A. 3); In re Ek, 57 App. D. C. 203, 19 F.(2d) 677, 678. However, we see little basis for it. An inventor is charged with knowledge of whatever the prior art discloses, but the disclosure, to be an anticipation, must be clear and certain. Why it need be more clear in a foreign patent than domestic one, we confess is not obvious to us. But we need not now determine whether the distinction is too firmly established to be disregarded. We mention it merely by way of a caveat.

■ So the question of validity comes down to whether it was invention to conceive of this type of cover and back-plate, when built-up covers with strengthening metal strips were old. It was certainly no great step forward in the art, but even a small step may require invention rather than mechanical skill. Whether or not it did is a matter of judgment upon which equally reasonable men will not invariably agree; and for the solution of the problem no hard and fast rules can be laid down. An advance which seems small and obvious after it is made may often gain support for the claim that inventive thought was required to make it, by reason of its immediate and wide-spread adoption by the trade. Kurtz v. Belle Hat Lining Co., 280 F. 277 (C. C. A. 2); Van Heusen v. Earl & Wilson, 300 F. 922 (D. C. S. D. N. Y.); Franc-Strohmenger & Cowan v. Arthur Siegman, Inc., 27 F.(2d) 785 (C. C. A. 2). The patent in suit, however, is not thus aided, for the patented devices were not manufactured commercially until fourteen years after the patent issued. This was because of the difficulty of forming the flaps. Trussell testified that there was no standard machine which he could find for performing this operation, and that he had to design and develop his own method of splitting the leather, and "junked over $2,000 worth of equipment" in trying to build the splitting machine which

was finally evolved. Though a patentee is not obliged to put his patent to immediate use, so long a delay as here occurred may well raise a doubt whether Trussell's inventive thought did not reside in devising the machine for making the article rather than in the conception of the article itself; but, although the doubt assails, it does not convince. The machine was not evolved independently of the patented article, but in an effort to make commercially practicable the manufacture of an article already conceived. The conception of a binder of the patented description was a new and useful idea, and, although it was no great advance over the old construction, we cannot say that any one acquainted with the prior art and possessing ordinary mechanical skill might have conceived the idea of a binder so constructed. Not only does a patent carry a presumption of validity, but the defendant's own efforts to accomplish the same result and escape infringement adds something of persuasion in favor of invention. See H. D. Smith & Co. v. Peck, etc., Co., 262 F. 415, 417 (C. C. A. 2); Kurtz v. Belle Hat Lining Co., 280 F. 277, 281 (C. C. A. 2). We think the court below was correct in holding the patent valid.

▮ The extent of the reference for the collection of damages is questioned upon the ground that the markings on plaintiff's articles are not sufficiently clear to comply with the statute. 35 USCA § 49. This is a question which can as well be disposed of now as upon a later appeal from the final decree. A large number of binders were introduced in evidence, and Trussell upon cross-examination was asked to read the markings impressed thereon to give notice of patent protection. In some instances he was able to do so either with the naked eye or with the aid of a magnifying glass; in others he failed even with the glass. He was more successful than was either the court below or this court; but there is something almost ludicrous in a contention that, because the patentee himself can succeed with a magnifying glass in reading the larger part of his patent notices, the goods are properly marked. Trussell testified that plaintiff's policy was to make the notice sufficiently clear for competitors to see but as inconspicuous as possible for purchasers, because the trade objects to any marking. The District Judge said that he was not convinced that plaintiff was deliberately failing to mark its product with the patent notice required by statute, but he made no express finding that the marking was sufficient to comply with the statute. To us it seems clear that it was not. The statute requires a patentee "to give sufficient notice to the public" that the article is patented. If a patentee chooses, it matters not for what reason, so to mark his goods that a magnifying glass is required to read what he says, it is not a "sufficient notice to the public"; and in that event he must prove the giving of actual notice of infringement to the particular defendant whom he would charge with damages. See Dunlap v. Schofield, 152 U. S. 244, 14 S. Ct. 576, 38 L. Ed. 426; Coupe v. Royer, 155 U. S. 565, 584, 15 S. Ct. 199, 39 L. Ed. 263; Flat Slab Patents Co. v. Turner, 285 F. 257, 267 (C. C. A. 8). He must mark his goods plainly. He cannot placate the trade by using only illegible references to his patent monopoly and yet put competitors on notice on the theory that their interest will be keen enough to induce them to employ a magnifying glass to discover what the marking says. He cannot eat his cake and have it too. Accordingly, the decree must be modified to limit the collection of damages to infringements occurring after due notice was given to defendant. The bill alleged and the answer admitted that such notice was given by letter dated March 16, 1928.

It is also contended that the patent was multifarious, and, as no disclaimer was filed, that costs were improperly awarded against appellant. Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799, 36 L. Ed. 609. But we need not consider this point, for neither the answer nor any assignment of error raised it.

The decree will be modified as above indicated, and, thus modified, is affirmed.