CHICAGO PNEUMATIC TOOL CO. v. HUGHES TOOL CO.

No. 4153.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1951.

Rehearing Denied Dec. 12, 1951.

Floyd H. Crews, New York City (Darby, & Darby, Harvey W. Mortimer, Raymond G. Mullee, all of New York City, Bruce McClelland, Oklahoma City, Okl., and P. H. Lamphere, Denver, Colo., on the brief), for appellant.

George I. Haight and Edward A. Haight, Chicago, Ill. (Robert F. Campbell, Ray L. Smith, Houston, Tex., and Lynn Adams, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Circuit Judges.

BRATTON, Circuit Judge.

Hughes Tool Company, hereinafter referred to as Hughes, brought this action against Chicago Pneumatic Tool Company, hereinafter referred to as Pneumatic, alleging infringement of claims 1, 2, and 3 of Fletcher patent No. 1,856,627; of claims 1, 2, and 3 of Scott and Garfield patent No. 1,983,316; of claims 1, 2, and 3 of Scott patent No. 2,011,084; and of claims 4, 6, 8, 12, 13, 14, and 15 of Garfield and Scott patent No. 2,030,442. All of the patents relate to cone drills or cone cutters used in the drilling of deep wells for oil and gas. The defenses interposed to the cause of action pleaded in the complaint were invalidity of the patents, insufficiency of patent markings, noninfringement, misuse of the patents, and laches and estoppel. By counterclaim, Pneumatic alleged infringement on the part of Hughes of claims 1, 3 and 6 of Reed patent No. 1,835,523; of claims 2, 13, 15, 16, 17, and 18 of Reed patent No. 1,865,-706; of all claims of Reed patent No. 1,997, 345; of claims 35, 36, 37, and 42 of Reed patent No. 2,047,110; of claims 1, 2, 3, 4, 8, 9, 10, 11, and 12 of Reed patent No. 2,058,-624; and of claims 5 and 7 of Reed patent No. 2,065,742. All of these patents likewise relate to cone drills or cone cutters for use in the drilling of deep wells for oil and gas. By reply to the counterclaim, invalidity of the patents and non-infringement were pleaded as defenses. The court found that the respective claims of the several patents pleaded in the complaint were valid; that they had been infringed; that there had not

been any insufficiency of patent markings; that there had been no misuse of the patents; and that Hughes was not precluded from recovering on account of laches or estoppel. In respect to the counterclaim, the court found that the respective claims of the several patents pleaded therein had not been infringed; and that if such claims be construed in such manner as to bring the Hughes structures within their scope, they would be invalid for anticipation and lack of invention. The court entered judgment enjoining Pneumatic from continuing its acts of infringement; awarding damages for infringement of the Scott and Garfield patent, the Scott patent, and the Garfield and Scott patent; appointing a master to ascertain and report the amount of such damages; reserving for jury trial later the question of damages for infringement of the Fletcher patent in the event the court should first determine that such patent was valid and had been infringed; and dismissing the counterclaim. 90 F.Supp. 845. Pneumatic appealed.

It is urged with emphasis that the respective claims of the several patents pleaded in the complaint are invalid. This is not the first attack made upon these patents on the ground of invalidity. Every claim involved here has been previously challenged on that ground. Some of them have been sustained by the Court of Appeals of the Fifth Circuit, some have been sustained by this court, and some have been expressly upheld by both courts. Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500; Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, certiorari denied, 338 U.S. 948, 70 S.Ct. 487, 94 L.Ed. 585, petition for rehearing denied, 340 U.S. 923, 71 S.Ct. 355, 95 L.Ed. 666, second petition for rehearing denied, 340 U.S. 939, 71 S.Ct. 487, 95 L.Ed. 678; Williams v. Hughes Tool Co., 10 Cir., 186 F.2d 278, certiorari denied, 341 U.S. 903, 71 S.Ct. 612, 95 L.Ed. 1342, petition for rehearing denied, 341 U.S. 934, 71 S.Ct. 802, 95 L.Ed. 1362, second petition for rehearing denied, 341 U.S. 956, 71 S.Ct. 1013, 95 L.Ed. 1377. In view of the painstaking care with which the question of validity of such claims was considered in the cases to

which reference has just been made, there is no need to explore the question anew, patent by patent, or claim by claim. To do so, would merely extend the length of this opinion without serving any useful purpose. But in this connection, one ground of attack upon the Garfield and Scott patent No. 2,030,442, not determined in any of the earlier cases, merits discussion. It is said that this patent is invalid for prior invention as shown in Harrington patent No. 2,000,076. The application for the Harrington patent was filed October 3, 1932, and the patent was issued May 7, 1935. The application for the Garfield and Scott patent was filed October 28, 1933, and the patent was issued February 11, 1936. Pneumatic introduced evidence tending to carry the Harrington invention back to March 15, 1932. But the court found upon evidence adequate to support the finding that Garfield and Scott conceived the invention disclosed and claimed in their patent in the middle of December, 1931; that they reduced it to practice by February 6, 1932; and that they diligently continued development of it until commercial production began in August, 1932. The rule to be applied in a contest between two or more rival inventors whose applications for patent are pending at the same time is that the one who first conceives the invention and exerts reasonable diligence in perfecting it and reducing it to practice is the first inventor. Willard v. Union Tool Co., 9 Cir., 253 F. 48. Since Garfield and Scott conceived their invention prior to the filing of the application for the Harrington patent, or any date of invention claimed for Harrington, they were the original inventors and therefore the patent issued to them is not invalid for prior invention as shown in the Harrington patent. In the light of the previous cases determining that the respective claims in the several patents were valid, supplemented by the views just expressed with respect to Garfield and Scott being prior inventors over Harrington, we have no difficulty in reaching the conclusion that the attack upon the validity of the respective claims of the several patents pleaded in the complaint is without merit.

It was the view of the trial court that the type E bit manufactured and marketed by Pneumatic infringes all of the respective claims of the several patents pleaded in the complaint. Pneumatic concedes that if Scott & Garfield patent No. 1,983,316 is valid, it is infringed. It is argued briefly that the bit does not infringe Scott patent No. 2,011,084, or Garfield & Scott patent No. 2,030,442. But we are unable to share that view. It is clear that the bit responds to the respective claims of these two patents presently in issue. With respect to Fletcher patent No. 1,856,627, claims 1 and 3 each include as an element teeth on the cutters of approximately the same size. The teeth on the type E bit are not substantially uniform or equal in size. Some are approximately twice as long as others. That difference between claims 1 and 3 of the patent and the accused structure is substantial and therefore it cannot be said that the structure infringes such claims. But claim 2 is completely silent in respect to uniformity or sameness in size of the teeth, and the accused structure does infringe that claim. The patent has expired. No question is presented in respect of present or future infringement of it. And since the accused bit did infringe claim 2 during the life of the patent, the rights of the parties on the accounting will be the same as they would be if it infringed all three of the claims. Accordingly, the determination of the trial court that the accused structure infringes claims 1 and 3 is not prejudicial to the rights of Pneumatic and does not warrant disturbance of the judgment on appeal.

Pneumatic contends that Hughes should not prevail for the reason that it has misused the patents on which it relies. The argument in support of the contention is that while in form Hughes leases its drilling devices with title reserved and exacts a commitment on the part of each lessee to return the device when its useful life has ended, the transactions are in reality sales; that after receiving its full reward, Hughes objects to legitimate repair of the devices; and that it has filed numerous suits against others for retipping worn teeth on cones. It is said that in

this manner, Hughes has extended the monopoly of the patents beyond their permitted scope. This contention was pressed and rejected in Robertson Rock Bit Co. v. Hughes Tool Co., supra, and in Williams v. Hughes Tool Co., supra. On the authority of those cases, and without reiteration or amplification of that which was said in them, we fail to find merit in the contention.

Pneumatic urges the further contention that Hughes is barred by laches and estoppel from asserting any rights under any of its patents in suit. It is argued that Hughes led Pneumatic to believe that it did not consider the type E bit an infringement of the Hughes patents and would not sue for infringement based upon the manufacture and marketing of such bits; and that in reliance thereon, Pneumatic spent more than $400,000 in the expansion of its facilities for the manufacture of bits of that type. To support the argument that Hughes led Pneumatic to believe that it did not consider the type E bit an infringement of the Hughes patents and would not sue for infringement based upon the manufacture and marketing of such bits, reliance is placed upon certain statements made by Hughes in its brief filed in an action between these same parties pending in the United States Court for Delaware, upon certain statements contained in its brief filed in the case on appeal to the Court of Appeals for the Third Circuit, and upon certain statements contained in its brief filed in the Supreme Court in opposition to the granting of certiorari in the case. The critical statements in the three briefs were substantially the same. There was no material difference between them. The pertinent part of the brief filed in the Court in Delaware and the pertinent part of . the brief filed in the Court of Appeals for the Third Circuit were considered in Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 180 F.2d 97, certiorari denied, 340 U.S. 816, 71 S.Ct. 46, 95 L.Ed. 600; and it was there held in effect that such statements failed to support a charge of deception or misrepresentation. We think that the statements could not reasonably have been construed as intended to constitute or as constituting a waiver or renunciation of any right to assert infringement based upon the manufacture and sale generally of type E bits. Moreover, the trial court expressly found that Pneumatic did not act in reliance upon the presently asserted admission of noninfringement. And the evidence and the inferences fairly to be drawn therefrom adequately support the finding. For the reasons indicated, the plea of laches and estoppel finds no sustainable basis in the record.

The right of Hughes to recover damages for infringement is challenged on the ground that it did not mark its patented devices or the packages in which the devices were marketed in the manner required by law, and did not notify Pneumatic of infringement. Title 35, section 49, United States Code, provides in presently material part that it shall be the duty of all patentees and their assigns, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented, either by fixing thereon the word "patent", together with the number of the patent, or when, from the character of the article, that cannot be done, by fixing to it, or to the package in which one or more of them is enclosed, a label containing the like notice; and that in a suit for infringement brought by a party failing to so mark, no damages shall be recovered, except on proof that the defendant was duly notified of the infringement and continued thereafter to make, use, or vend the article so patented. The meaning of the statute is free from doubt. Under its terms, a patentee or his assignee who makes and sells the article covered by the patent is precluded from recovering damages from an infringer unless he has given notice to the public of his right by marking the article or the container in which it is marketed in the manner prescribed by the statute, or has notified the particular infringer of the infringement and such infringer continued thereafter to infringe. And the placing of the marking on the article or the container, or the giving of notice of infringement to the defendant, must be alleged and proved as a prerequisite to the recovery of dam-

ages. Marking was alleged in the complaint. Only one witness testified in respect to the method and manner of the marking. One brief excerpt is lifted from his testimony and relied upon to sustain the contention that there was a failure to mark as required by law. But in pressing the contention, Pneumatic views the testimony of the witness too narrowly. Fairly construed in its totality, the relevant testimony was that on the containers in which the bits were marketed there was a marking that the devices were patented by "one or more of the following patents", followed by the numbers of the patents in suit, and others not presently in controversy. Marking in that manner was sufficient to meet the exactions of the statute. Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 97 F.2d 945, certiorari denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415, petition for rehearing denied, 305 U.S. 673, 59 S.Ct. 242, 83 L.Ed. 436.

 Coming to the counterclaim, Reed Patent No. 1,835,523 represents an effort to eliminate the use of threaded rings as a means of holding roller cutters securely on their spindles. This is a paper patent. No devices or structures have ever been manufactured and marketed under it. Claim 1 delineates a one-piece element comprising a spindle, a shank extending at an angle to the spindle, and adapted for insertion into a socket in a bit head, a base plate or flange between the spindle and shank and integral with both, the spindle having an annular groove in its surface, and having also a flared portion integral therewith and with the base and spaced from the edge of the groove. Claim 3 delineates a spindle having a recess in its bearing surface, a roller cutter having a bore with a recess therein, an element adapted to lie initially in the spindle recess and to be projected radially outward to lie partly in the spindle recess and partly in the seat recess of the cutter, and filling material inserted through the recess of the spindle for forcing the element radially outward to lie across the joint between the spindle and the cutter and rotatively lock the cutter on the spindle. And claim 6 delineates a one-piece bearing element comprising a spindle, shank, and base plate all in one piece with the shank at an angle to the spindle and with the base lying in a plane at right angles to the axis of the spindle, the spindle having a groove extending circumferentially about the same, locking means in the groove and projected therefrom, and the cutter having a seat recess to receive the locking means, the spindle and base having between them a conical bearing portion integral with both, the cutter having an integral portion at its base of conical form to bear on the conical bearing of the spindle, the integral portion of the cutter reaching inwardly back of the locking means and defining the seat recess at this point. The structures manufactured and marketed by Hughes retain their cutters on the shafts by a rolling ball-bearing arrangement. The balls are inserted through a channel in the shank into the ball raceway. The channel is then closed by a plug, the inner end of which is recessed to form a part of the ball race in the shaft. The plug is anchored by welding and it can be removed by drilling out the weld. The retaining or locking means used by Hughes is substantially and decisively different from that delineated in the Reed patent.

 ■ Reed patent No. 1,865,706 obviously represents a further effort to provide better means than the use of threaded rings for holding cutters on their spindles. This also is a paper patent, no devices or structures having ever been manufactured and sold under it. As described in the patent each cutter in the structure has a locking shoulder provided by the wall of an annular groove on the interior adapted to receive segmental locking pieces which engage the shoulder and hold the cutter shell onto the spindle while allowing free rotation of the cutter about the spindle as a consequence of the cutter rolling upon the bottom of the hole being drilled during the rotation of the drill head about its vertical axis. The spindle has an annular groove in its surface at a depth approximately equal to the width of the segmental piece measured along the radius thereof enabling the segmental piece to lie within the groove of the spindle so as to permit the cutter shell to thrust axially into place on the spindle. In the act of placing the cutter on the spindle its wall

at the small end of the cone engages a plunger member and forces it inwardly parallel with the axis of the spindle. That stresses a spring which bears at its inner end upon a cup form having a conical end adapted to go between and force radially outward a plurality of plungers or pins which at their outer ends bear upon the segmental locking pieces. Power stored in the spring as a consequence of thrusting the cutter axially along the spindle exerts itself to force the conical pin or member between the inner ends of the plungers which are moved radially outward and thus the segmental locking pieces are moved radially outward to enter the groove in the cutter shell, the outward movement being arrested by the outer edge of the segment coming against the bottom of the groove in the shell. In thus assembling the cutter with the spindle, the locking means is set to hold the cutter on the spindle as a consequence of placing the roller in working position on the spindle. The spreader pins or plungers bear upon the segmental pieces about midway of their length and maintain them in position against circumferential displacement. Instead of mounting the cutter on the spindle without a wear piece or bushing, the use of wear pieces or bushings between the cutter and the spindle is preferred. The wear pieces or bushings are split into halves and are placed on the spindle back of the shoulder or wall defining the front part of the spindle and are spaced apart therefrom so that the front edge of the bushing forms virtually a continuation of the inner wall of the spindle groove. The bushing is provided with a conical bearing surface or portion, and the cutter shell has a bore or recess flared to provide an inclined bearing wall to bear upon the conical or inclined face of the bushing to sustain the thrust of the cutter. Some of the claims asserted to have been infringed expressly call for a bore and flaring counterbore near the base of the cone, and means for holding the cutter irremovably on the spindle, such locking means including a member movable radially of the spindle and operating means for such member housed within the spindle. Unlike the teachings of this patent, in the Hughes structures the cutters are retained on their shafts by a rolling ball-bearing arrangement. And the locking means may be removed by drilling out the plug, removing the balls, and then removing the cutter from the spindle. The Hughes bits do not employ ring segments adapted to lie initially in a spindle recess and be pressed outwardly from the spindle by means of springs or plungers. They do not have a bore and flared counterbore near the base of the cone. And they do not have locking means inaccessibly and permanently enclosed in the cutter which hold the cutter irremovably to the spindle. These differences are broad and distinctive and for that reason it cannot be said that any structure manufactured and marketed by Hughes does substantially the same thing in substantially the same way as that taught in the patent.

The ▇▇▇ Reed patent No. 1,997,345 relates to a rock bit. The several claims in the patent delineate in varying language a bit in which the spindle rather than the ends of the roller bearings take the end thrusts outwardly from the rotation of the conical cutter. In the structures manufactured and marketed by Hughes, clearance is provided at the shoulder between the cutter and the spindle. Differing from the patent, the end thrust in the Hughes bits is taken by the end of the roller bearings. Moreover, the application for the patent was originally filed in 1932. The Patent Office required division; and in 1934, a divisional application was filed which matured as the patent presently under consideration. Prior to November, 1934, no claims in either the original application or the divisional application blueprinted a bit in which the spindle takes the end thrusts and relieves the rollers of that function. That feature was added to the claims more than two years after Hughes had begun the manufacture and marketing of cutters substantially the same in respect of that element as the ones now said to infringe the patent, more than two years after such cutters were in public use, and after Reed had seen one or more of them. An applicant for a patent cannot enlarge his pending application in such manner as to embrace

and include for the first time the essential elements of an article, device, or structure which has been in public use more than two years. A patent obtained in that manner does not represent patentable invention. It is mere appropriation of the inventive skill of another. Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34; Hazeltine Research v. General Motor Corps., 6 Cir., 170 F.2d 6, certiorari denied, 336 U.S. 938, 69 S.Ct. 750, 93 L.Ed. 1097. The bits manufactured and marketed by Hughes do not infringe this patent; but if the claims of the patent may properly be construed as sufficiently broad to bring within their scope the structures alleged to infringe, the claims are invalid for prior public use of devices embodying the essential elements of the asserted invention.

■ Reed patent No. 2,047,110 concerns itself with a device or structure denominated in the record as a sort of combination of a cross roller bit and a conical bit. This is another unused patent, no devices or structures having ever been manufactured or sold under it. The presently asserted infringement is limited to claims 36 and 42. Claim 36 calls for a drill comprising a one-piece cutter enclosing the free end of a spindle, the other end of the spindle being integral with the spindle support, and a support, roller bearings positioned between the cutter and spindle, the bearings being shielded in a recess from compression endwise between the cutter and the spindle and annular frictional bearing surfaces in the cutter bore complementary to the frictional bearing surfaces on the spindle, and floating means rotatively locking the cutter on the spindle. And claim 42 calls for a cutter assembly comprising a roller cutter having an annular frictional bearing surface directly engaging a surface on a spindle, the spindle having a free end separately formed and the other end of the spindle being integral with its support, floating retaining elements between the cutter and the spindle, such elements bearing on the spindle portion integral with its support and projecting beyond the spindle into a groove formed in the cutter, and roller bearings positioned between the spindle and the cutter. It is to be noted that in each claim one element is floating means between the cutter and the spindle for retaining the cutter rotatively on the spindle. In substantial departure from these claims in the patent, the Hughes devices do not employ floating means or floating elements between the cutter and the spindle for retaining the cutter rotatively on the spindle. The accused structures manufactured and marketed by Hughes employ a row of balls as a retaining element. But if the claims in the patent may properly be construed as broad enough to bring within their scope the roller ball arrangement in the accused structures, the patent is anticipated by earlier Hughes structures.

■ Reed patent No. 2,058,624 relates to an arrangement for retaining the cutter on the spindle of a drill bit. This patent has never been used. No device or structure has ever been manufactured and sold under it. The charge of infringement is limited to claims 1, 2, 3, 8, 9, 10, 11, and 12. It is said on behalf of Pneumatic that invention in these claims resides in providing a conical cutter rock bit in which the balls take end thrusts and the rollers take the radial load at the base of the cutter. As stated in the patent, one object of the invention is to provide a rolling bearing raceway, or raceways, between the cutter and the spindle which does not necessitate the weakening of any parts to provide for the insertion of the rolling elements into their operative positions. A further object is to reduce the friction between a retaining ring and that portion of the spindle on which the ring rotates. And still a further object is to take up the thrusts between the cutter and its spindle by means of antifriction bearings. And as explained, rollers and balls are mounted within smooth raceways devoid of any openings tending to weaken either the spindle or the cutter. A retaining ring is employed normally rotatable with a cone cutter but removable therefrom, such ring engaging locking elements disposed within an annular recess in the spindle. Rollers are inserted between the ring and the spindle, the rollers pref-

erably being in the form of cylinders having axes parallel to the spindle axis. For locking the cutter on the spindle in such manner that it will be retained in proper position relative to the bit head and yet be capable of free rotative movement about the spindle, floating segments are mounted in a groove on the spindle, of such external diameter as to project from the spindle and thus provide in effect an annular rib or shoulder. The portion of the bore in the cutter adjacent the rib or shoulder made up of the segments is formed to fit the rib. At the large or rear end of the bore of the cutter a ring is mounted, this being connected with the cutter member by a screwthread, so that the ring turns with the cutter. In order to reduce friction between the screw ring and the spindle, rollers are mounted within the reduced portion of the groove on the spindle, which lies between the base plate and an annular flange. The cutter near its closed end is provided with a cylindrical bearing portion engaging the free end of the spindle and serving as a centering means of keeping the axis of the cutter in proper alignment with the spindle axis. Adjacent to the bearing portion, the cutter is provided with a radial wall and cylindrical wall. Ball bearings engage both of these walls as well at two complementary surfaces on the spindle comprising the bearing portion and a shoulder. And by virtue of the engagement of the balls with the four surfaces, the balls are capable of resisting thrust components on the cutter in the direction of its axis and at right angles thereto. In varying language, the several claims in suit call for rolling bearings interspersed between the cutter and the spindle, and means for removably holding or locking the cutter on the spindle. Differing from the disclosures of the patent, the Hughes structures do not employ floating segments as a means of retaining the cutters on their spindle. Instead, the Hughes structures employ ball bearings which are inserted through the inside of the spindle and they serve as locking means as well as bearings.

Reed patent No. 2,065,742 has not been used. No devices or structures have been manufactured and marketed under its protection. The alleged infringement is limited to claims 5 and 7. Other claims are not involved. Claim 5 delineates a roller cutter comprising a spindle support, a spindle projecting at right angles therefrom, the spindle comprising a portion of large diameter integral with the support and a portion of reduced diameter projecting from the first mentioned portion and having a free end cutter, a cutter enclosing the spindle, the cutter having rows of teeth in a frusto-conical zone and having rows of teeth in another zone tapered with respect to the frusto-conical zone, a plurality of bearing means between the cutter and the spindle and adapted to support the cutter without direct contact between the interior surface of the cutter and the peripheral surfaces of the spindle portions, and bearing means comprising rolling bearings between the cutter and the large diameter portion of the spindle and comprising a bearing sleeve surrounding and fitting the spindle portion of reduced diameter, the sleeve being surrounded by the frusto-conical zone and the rolling bearings being surrounded by the tapered zone, whereby the bearing means cooperate to sustain radial thrusts from both cutter zones. And claim 7 calls for a roller cutter arrangement comprising a spindle support, a spindle portion integral therewith and projecting at right angles therefrom, the spindle portion providing a raceway for ball bearings, another spindle portion of reduced diameter projecting from the first mentioned spindle portion and having a free end, a cutter enclosing the spindle portions, a plurality of bearing means between the cutter and the spindle portions, one of which comprises balls mounted in the raceway and cooperating with a groove in the cutter to lock the cutter rotatively on the spindle portion of large diameter and another of which comprises a bearing sleeve surrounding and fitting the spindle portion of reduced diameter, such bearing means cooperating to space the cutter normally out of direct contact with the peripheral surfaces of both spindle portions, the open end of the cutter having clearance preventing contact between the cutter and the spindle support. The application for the

patent was amended by adding claims, two of which became claims 5 and 7 of the patent as finally issued. The specification referred to the removable portion of the spindle as the terminal spindle section. In the added claims which became claims 5 and 7 no reference is made to a terminal spindle section. These claims brought into the patent as an element a bearing sleeve surrounding and fitting the spindle portion of reduced diameter. For more than two years prior to the filing of the added claims, two of which became claims 5 and 7 of the patent, bits manufactured and marketed by Hughes of the general type now charged to infringe the patent had been in wide public use. And furthermore, Schlumpf patent No. 2,104,819 discloses the invention claimed in claims 5 and 7 of the Reed patent. The original application for the Reed patent was filed September 7, 1933. The added claims, two of which became claims 5 and 7, were filed May 8, 1936. And the patent was issued October 27, 1936. The application for the Schlumpf patent was filed March 9, 1935. And the patent was issued January 11, 1938. Thus, the applications for the two patents were pending at the same time. But the record before us indicates clearly that the application for the Schlumpf patent was executed prior to any effective assertion or disclosure on the part of Reed of the critical patentable novelty claimed in claims 5 and 7. If claims 5 and 7 of the Reed patent be construed as broad enough to bring within their scope the accused structures manufactured and marketed by Hughes, they are invalid for anticipation.

▆▆▆▆ Complaint is made that the court denied the demand of Pneumatic for a jury trial upon the issues of validity and infringement of Fletcher patent No. 1,856,627. The complaint alleged among other things past infringement of this patent, continuing infringement, future infringement unless enjoined, and damages. The prayer was for injunctive relief to prevent future infringement, and damages for past infringement. After issues had been joined and while the cause was pending in the trial court, the patent expired. Nine days after such expiration the demand for trial by jury was filed, accompanied by an explanation that the patent had expired less than ten days previously. The court denied the demand in respect to the questions of validity and infringement, but granted it as to the question of damages if it was first determined by the court that the patent was valid and infringed. The action as originally filed was clearly one in equity. Being an action for equitable relief when it was filed, and the equity jurisdiction of the court having attached, expiration of the patent did not take away that jurisdiction. Expiration of the life of the patent during the pendency of the action did not oust the court of its equitable jurisdiction which had already attached. Clark v. Wooster, 119 U.S. 322, 7 S.Ct. 217, 30 L.Ed. 392; Rice & Adams Corp. v. Lathrop, 278 U.S. 509, 49 S.Ct. 220, 73 L.Ed. 480. True, validity and infringement are ultimate facts upon which depend the question of liability for damages; and in actions at law for the recovery of damages for infringement, they are to be decided by the jury. United States v. Esnault-Pelterie, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123. That rule has appropriate application in an action at law instituted during the life of a patent in which plaintiff seeks only damages for past infringement but no equitable relief by way of injunction or otherwise to prevent future infringement, or in action at law instituted after the expiration of a patent solely for the recovery of damages. Root v. Railway Co., 105 U.S. 189, 26 L.Ed. 975. But since this action was one in equity when instituted, expiration of the patent during the pendency of the action did not automatically or ipso facto transform the action into one solely at law in the sense that Pneumatic had the absolute right to a trial by jury of the issues of validity and infringement. It was within the sound judicial discretion of the court to retain equity jurisdiction for the purpose of determining the issues of validity and infringement, and at the same time grant a trial by jury of the issue of damages in the event the patent was first sustained as to validity and infringement. The cases of Bereslavsky v. Caffey, 2 Cir., 161 F.2d 499, certiorari,

denied, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355, and Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862, certiorari denied, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393, are not to the contrary. In each of those cases, after the patent expired plaintiff amended his complaint so as to seek only money damages; and less than ten days after such amendment, plaintiff demanded trial by jury. Defendant moved to strike the demand; and purporting to act pursuant to Rule of Civil Procedure 38(b), 28 U.S.C.A., the trial court struck it. On mandamus arising out of the first case, and on appeal in the second, it was held in effect that since the demand for trial by jury was made within ten days after the amendment of the complaint, it should not have been stricken on the ground of being made out of time. Here, Hughes did not amend its complaint so as to seek only relief measured in money, and it did not demand a jury trial. It was Pneumatic, the defendant, who sought by its demand for jury trial to have the action discontinued as one in equity and treated as one at law after expiration of the patent.

■ Finally, error is assigned upon the action of the court in denying the demand of Pneumatic for trial by jury of the issues of validity, infringement, and damages as to Reed patent No. 1,835,523. With respect to all of the patents pleaded therein, the counterclaim alleged past infringement, infringement in the future unless enjoined, and damages. The prayer in conventional language was for an injunction to prevent future infringement and damages for past infringement. After issues had been joined and while the cause was pending for trial, patent No. 1,835,523 expired. Thereafter, Pneumatic filed an amendment to its counterclaim. The amendment related solely to the prayer in the counterclaim; and the prayer was unchanged except as to this particular patent. In respect to such patent, the amendment limited the prayer to damages for past infringement. The amendment was accompanied by a demand for a trial by jury of the issues of validity, infringement, and damages as to that patent. In a single order, the court allowed the amendment and granted the demand for trial by

jury only on the question of damages in the event the court should previously determine that the patent was valid and infringed. Reply in the nature of an answer to the counterclaim having been filed, the counterclaim could be amended only with leave of the court. Rule of Civil Procedure 15(a), 28 U.S.C.A. And it lay well within the range of sound judicial discretion of the court to allow the amendment in toto, to deny it altogether, or to permit it with reasonable conditions and limitations. Construing as a harmonious whole the parts of the order relating to this particular patent, the effect of the order was to allow the amendment to the counterclaim but at the same time and as a part or condition thereof to limit to trial by jury the issue of damages if validity and infringement were first found by the court. And inasmuch as it was within the power of the court to deny the amendment altogether, or to permit it with reasonable conditions and limitations attached, Pneumatic cannot be heard to complain that it was allowed only in part, trial by jury being limited to the issue of damages in the event validity and infringement were first determined by the court.

The judgment is affirmed.