Barry **RUTHERFORD**, Plaintiff,

v.

**TRIM–TEX, INC.**, an Illinois Corporation, Defendant.

No. 89 C 6306.

United States District Court, N.D. Illinois, E.D.

Aug. 28, 1992.

result reached here.

---

**2.** That view of course is wholly consistent with both the view this Court has announced and the

**160**

Richard J. Ward, Jr., David A. Dillard, Thomas J. Daly, Christie, Parker & Hale, Pasadena, Cal., James P. Zeller, Richard M. LaBarge, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., for plaintiff.

Anthony S. Zummer, Palmatier & Zummer, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court for a motion to compel discovery under Fed. R.Civ.P. 37(a) in an action for an accounting of damages to be awarded pursuant to 35 U.S.C. § 284. In the prior history of this case, the court granted a motion for summary judgment for the plaintiff, Barry Rutherford, holder of U.S. Patent No. 4,047,478 entitled "Drywall Bead Accessory," finding that the '478 patent was valid and that the defendant, Trim–Tex, Inc., literally infringed claims 1, 2, 3, and 5 of the patent.

During the discovery stage, Rutherford sought information relevant to the accounting of damages, but Trim–Tex refused to identify the sales of its infringing product prior to December 1988. Trim–Tex contends that Rutherford did not adequately mark the patented product and thus is not entitled to damages prior to Trim–Tex receiving actual notice of the infringement pursuant to 35 U.S.C. § 287, therefore pre-December 1988 information would not be admissible.

In response, Rutherford contends that marking the product's packaging is sufficient compliance with § 287, entitling him to damages as far back as August 18, 1983, when he began to mark all of the product's cartons with the patent notice and patent number. Rutherford seeks a motion to compel discovery of the relevant information from 1983 up to the end of 1988. For the reasons stated, the court grants the plaintiff's motion.

## THE PATENTED PRODUCT

A brief description of the patented product is necessary for the resolution of the pertinent issues. Rutherford is the president of Flannery, Inc. which manufactures the FastMask Drywall Trim. The '478 patent is embodied in this product which is a metal drywall casing bead ten feet long with a T-shaped cross section. The vertical portion of the "T" is about 1½ inches high and has holes punched at regular intervals along its length. The horizontal portion, or top cross bar of the "T", is about ⅞ of an inch across. The horizontal portion is scored lengthwise along the entire ten foot length next to the "T" intersection so that one side of the "T" cross bar may be torn away leaving the remainder in an upside down "L" cross section.

The FastMask is typically installed in the gap between drywall and the ceiling during the construction of the walls. One side of the "T" cross bar fills that gap, with the other side exposed against the ceiling and the vertical portion against the drywall. When drywall mud is applied over the vertical portion of the casing bead, the exposed "T" bar protects the ceiling from excess splash-over. Afterwards, the tear-away half of the "T" cross bar is removed to leave a clean ceiling and neat drywall-ceiling junction. The installed portion of the product is completely covered with drywall mud and is not visible.

This product is sold in ten foot lengths, 30 to a carton. The carton is marked with a patent notice reading "PATENT # 4,074,-478" that is clearly visible below the product's name. There is no such similar marking on the product itself. Neither, for that

matter, is there a marking of any sort on the product.[1]

## ANALYSIS

The issue before the court is whether marking of a patented article's packaging, where the article itself was not marked, sufficiently complies with 35 U.S.C. § 287 to entitle the plaintiff to damages for infringement prior to actual notice to defendant of infringement. Section 287(a) provides:

(a) Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice. Based on Title 35, U.S.C., 1946 ed. § 49 (R.S. 4900, amended Feb. 7, 1927 ch. 67, 44 Stat. 1058).

The Supreme Court recently noted the primary purpose of § 287 is to provide information to the public concerning "the status of the intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. ThunderCraft Boats, Inc.*, 489 U.S. 141, 162, 109 S.Ct. 971, 983, 103 L.Ed.2d 118 (1989). This is consistent with the Court's long-standing focus on the notice effected by the method of marking the patented article rather than on the precise mechanistic compliance with the statute. In *Sessions v. Romadka*, 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609 (1892), a manu-

facturer of trunk clasps did not put the patent marking on its smallest size trunk clasp, but rather put the patent marking on the package. The Court did not feel compelled to debate the standards at which point an article becomes too small to mark. The Court held that complying with the alternate provision of the statute, marking of the package, is sufficient compliance because "in a doubtful case, something must be left to the judgment of the patentee." *Id.* at 50, 12 S.Ct. at 805. Thus, the Court shows that its primary concern lay not with the standards under which a package may be marked instead of the article, but rather on whether any notice was given to the public by either method of marking listed in the statute.

Likewise, the Seventh Circuit has de-emphasized the conditions precedent to allowing a patentee to comply with alternate package marking. In a case involving a design patent for an ampule, the Seventh Circuit acknowledged that "[n]otice to the public generally is provided by affixing upon the article 'the word "patent", together with the number of the patent,' or by affixing to the package enclosing such article 'a label containing the like notice.'" *Smith v. Dental Products Co., Inc.*, 140 F.2d 140, 152 (7th Cir.1944). The Seventh Circuit confirmed this relaxed attitude toward compliance in a later case, stating that § 287 "provides that patentees may give notice to the public that an article is patented by marking a notice to that effect on the package containing it." *Union Carbide Corp. v. Graver Tank & Mfg. Co.*, 282 F.2d 653, 675 (7th Cir.1960).

Although neither *Dental Products* nor *Union Carbide* addressed the specific issue in this case, and may be viewed as mere dicta, they are nonetheless persuasive argument that § 287 is to be realistically applied. The Northern District has previously held that "Section 287 [has] been liberally construed," *American Can Co. v. Dart Industries*, 205 U.S.P.Q. 1006, 1008, 1979 WL 25105 (N.D.Ill.1979), and the

---

1. The court assumes for the purposes of this motion that the one foot sample provided as an exhibit in the earlier proceedings is accurately

representative of all the FastMask Drywall Trims sold.

court sees no reason why it should not continue to do so in this case.

■ Section 287 allows the package to be marked "when, from the character of the article, [marking the article] can not be done." Even the Supreme Court has not mandated that the article be marked if at all physically possible, but rather allows great discretion in the patentee to alternatively mark the package. *Sessions,* 145 U.S. at 50, 12 S.Ct. at 805. Here, the emphasis is in providing notice to the public. Marking the package is a sufficient alternative so long as the patentee, the licensees or distributors act so that the package marking is actually seen by the consuming public. *See Butterfield v. Oculus Contact Lens Co.,* 332 F.Supp. 750, 761 (N.D.Ill.1971).

Moreover, other jurisdictions generally apply a liberal construction of § 287 and do not severely scrutinize the character of the patented articles to determine whether the article was capable of being marked. For example, the Tenth Circuit in *Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 192 F.2d 620 (10th Cir.1951), ruled on a dispute involving patented drill bits for deep oil and gas wells. The Court unequivocally stated that "[t]he meaning of the statute [the predecessor to section 287] is free from doubt. [A patentee] has given notice to the public his right by marking the article or container in which it is marketed." *Id.* at 625. The court neither discussed the character of the article nor rationalized the reason for not marking the article. It held that the patent marking on the drill bit containers in which they were marketed was sufficient to comply with the statute. *Id.* at 626.

This lack of scrutiny of the character of the article is pervasive when the alternative marking is found to satisfy the statutory notice provision. In one situation where an article was clearly large enough to mark, the court merely noted as an aside that a tag with the patent marking hung from a fireplace grate sufficiently complied with § 287. *Bergstrom v. Sears, Roebuck and Co.,* 496 F.Supp. 476, 494 n. 9 (D.Minn. 1980).

■ Nevertheless, the court has a duty not to liberally construe statutory language so as to create superfluous provisions. *Zimmerman v. North American Signal Co.,* 704 F.2d 347 (7th Cir.1983). Some effect must be given to all of the language of § 287(a). Alternative marking of the package may sufficiently comply with the statute when there is some reasonable consideration presented for not marking the article due to physical constraints or other limitations, or, for reasons that go to the very purpose of the statute, marking the article itself would not provide sufficient notice to the public.

■ The size of an article is a relevant consideration for finding that marking of the package complies with the statute. The Supreme Court noted this 100 years ago in *Sessions v. Romadka,* 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609 (1842), discussed *supra.* This factor raises practically no scrutiny in deciding the issue of compliance. For example, one court in dealing with a small product simply stated that the "plaintiff has marked the packages containing its razor with the number of the patent ... which is all that the statute requires." *Gillette Safety Razor Co. v. Standard Safety Razor Corp.,* 2 F.Supp. 64, 69 (D.Conn.1932). Likewise, while automotive radiator caps are not so small that they are physically incapable of being marked, one court held without debate that "the plaintiff has complied with the marking provisions of [section 287] by affixing the statutory notice to packages containing its patented devices and in so doing has given notice to the public." *Saf-gard Products, Inc. v. Service Parts, Inc.,* 491 F.Supp. 996, 1010 (D.Ariz.1980).

■ The primary concern with the size of an article is the effective notice marking small enough to fit on the article provides to the public. Where a small article is affixed with the appropriate marking, the marking itself may be too small to afford the public adequate notice. Even where the article is large, the marking on the article must be large enough to easily read for notice to be effective and comply with

the statute. *Trussell Mfg. Co. v. Wilson–Jones Co.*, 50 F.2d 1027, 1030 (2d Cir.1931). Thus, a marking that required a magnifying glass to read fails to give the required notice to the public. *Id.*

■ In the case at bar, the size of Rutherford's FastMask is not in issue. Trim-Tex contends that the product is large enough to affix a sufficiently legible patent notice. Rutherford does not raise any objection to this specific issue. Rutherford's product, FastMask, is about 1–½ inches in height. Although it has holes punched at regular intervals on this surface, there is sufficient space between the holes to place legible patent markings. The court is then compelled to agree that the size of this product is not a valid reason for finding an alternative marking of the package in compliance with the statute. Nevertheless, the court does find other reasons for holding that the marking of the package sufficiently complies with § 287(a).

Under the liberal construction given § 287(a), non-physical characteristics of the article may be relevant considerations for alternatively marking the package. In *Wayne–Gossard Corp. v. Sondra Mfg. Co.*, 434 F.Supp. 1340 (E.D.Pa.1977), *aff'd*, 579 F.2d 41 (3d Cir.1978), the district court acknowledged that "there may be a point where the marking could be so expensive as to be impractical." *Id.* at 1364. Moreover, the district court noted that resultant defacement of the article might be a relevant factor, but ruled that custom of the trade was not a relevant consideration. *Id.*

On appeal, the Third Circuit overruled the reasoning of the lower court, in part, by holding that custom of the trade could be a relevant factor in allowing alternate marking of the package. 579 F.2d at 43. While affirming the lower court's decision that the package marking was not in compliance with § 287, the Third Circuit did so only because the plaintiff did not meet its evidentiary burden establishing when the packages were first marked. *Id.* The Court otherwise agreed that defacement, custom of the trade, expense and other reasonable factors may be considerations for finding compliance with the alternative marking. *Id.*

In addition to giving due consideration to a variety of factors in addressing the present case, the court notes that above all, a practical common sense approach must be taken when dealing with issues of compliance for the marking provisions of § 287. One court, addressing the issue of the correct locations of a marking on a trench shoring device, reasoned that it made "a great deal more sense to apply notice to the inner surface of the walls" where markings on the outside would have quickly worn away. *Shields–Jetco, Inc. v. Torti*, 314 F.Supp. 1292, 1303–04 (D.R.I.1970), *aff'd*, 436 F.2d 1061 (1st Cir.1971). This result appropriately focused upon notice to the public, because when the trench shoring device is in use, any marks on the outer walls are concealed against the trench walls and workers operate within the inner walls where the actual markings would be plainly visible and would not wear away.

■ One caveat or limitation exists to this approach. Where the patented article has markings or printing on it, other than the appropriate patent marking, then the alternate form of patent markings on the package is not sufficient compliance with the statute. *John L. Rie, Inc. v. Shell Bros., Inc.*, 366 F.Supp. 84, 90–91 (E.D.Pa. 1973) (§ 287 strictly construed where patented bag closure device had plaintiff's name and address printed on it, thus patent marking on package did not comply with statute); *Creative Pioneer Products Corp. v. K–Mark Corp.*, 5 U.S.P.Q.2d 1841, 1847–48, 1987 WL 54482 (S.D.Tex.1987) (patent marking on the tool's package insufficient to comply with statute where the wire stripper tool had other lettering and calibrations embossed on its handle).

The rationale behind stricter conformity to the marking provisions of § 287 when the article contains other markings is bound-up with the purpose of the statute to give notice to the public. Where the public finds markings or writings upon the article itself, the public should be able to rely upon the fact that a patent, if it exists, should also be noted with that writing.

The notice required by the statute is most effective when it can be easily seen by the users of the article.

Conversely, when the public finds no marking or writing whatsoever on the article, then the package would be the next most logical place for effective notice to the public of the existence of the patent. In the former situation, the manufacturer of the article is already placing markings on the article and so the burden of placing additional markings with the patent notice is small. In the latter situation, the burden of marking may require the manufacturer to incorporate a new step in the manufacturing process to place markings on the article.

From the evidence presented, the court finds that Rutherford's FastMask falls into the latter category—no markings whatsoever on the product, only on the package. The court agrees that it would be burdensome to add additional manufacturing steps to put a patent marking on the product, even though it may be done in several different ways as noted by the defendant. The court need not discern the degree of burden, nor the level of expense required, except to note that it would be significantly greater than the burden imposed where a product already involves a manufacturing process which puts marking upon it. The court, then, finds that this burden is a reasonable justification for allowing alternative markings on the package to be used.

The plaintiff also contends that alternative markings should be acceptable where a product, such as FastMask, would not be visible to the public after installation. The court does not find this to be a reasonable justification for this product. The period when this product is "in use" is when it is being installed during drywall construction, and the "public" for which notice is provided are building contractors. It is only in this period that the statute requires notice to the public to be effective. While marking the package does "memorialize" the patent notice post-installation, so too would unused marked inventory. Therefore, the non-visibility of a product in its final state is not adequate justification alone, for allowing alternative marking on the package.

However, having found the burden of adding a manufacturing step to be adequate justification to mark the package, the court finds that the package marking did sufficiently provide notice to the public as required by § 287. Rutherford presents an affidavit that FastMask is sold only in its cartons. Trim–Tex offers the affidavit of its president which does not dispute this directly, stating only that products of the same type as FastMask are sometimes sold separate from its container. Read together, this court finds that FastMask is sold only in its containers, while others' brands may be sold separately. Trim–Tex has offered no evidence showing specifically that FastMask is not sold in its marked cartons, and it would be inappropriate to hold plaintiff responsible for how the product is distributed after it is sold to the public by Flannery, Inc. Thus, the package markings of FastMask do provide notice to the public sufficient to comply with § 287.

## CONCLUSION

For the reasons stated, the court finds Rutherford to have been in compliance with the marking provisions of § 287 and thus grants the plaintiff's motion. Trim–Tex is hereby ordered to produce the requested information relevant to the accounting for damages from 1983 to present.