Booth, Judge,
delivered the opinion of the court:
This is a patent suit. Infringement is alleged. The defense relied upon goes exclusively to invalidity of the patent and nonuser. The patent is No. 1343599, issued to Harry F. Waite on June 15, 1920. The patent was allowed upon a single claim, as follows: An X-ray system composed of an X-ray tube with a hot cathode and an anode, a transformer unit with a single primary and a secondary composed of two sections, one having a few turns of coarse wire suitable for the cathode heating current and the other having many turns of fine wire suitable for the X-ray generating current, three wires connecting the X-ray tube and the secondary, two of which connect the coarse wire with the hot cathode and one of which connects the fine wire with the anode, and means for supplying the primary with a suitable electric current.
An intelligent discussion of the conception of the inventor involves a review of antecedent conditions which inspired the effort and point out what the inventor was trying to do and what he did. X-ray systems are old, their purpose long since disclosed; but notwithstanding their age, a necessity existed for an X-ray system so constructed as to be easily portable and available for use as a bedside unit and behind the lines in time of war. Lt. Col. John S. Shearer was an eminent scientist. During the war he was appointed to the School of Instruction, Cornell Medical School, New York City. Colonel Shearer wras deeply interested in securing a type of X-ray system available for use by the Army. The plaintiff and Colonel Shearer discussed the question and as a result the plaintiff conducted a series of experiments looking toward the construction of a unit capable of Army use as the urgent needs of the time required. The difficulty to be overcome in existing systems was the obviation of cumbersomeness. If a new system was to be evolved, its utility revolved about a reduction of parts, a simplification in construction, and a material reduction in weight and *451 cumbersomeness. Without going into the scientific causes or factors essential to produce X rays, it is sufficient for the case to limit observations in this respect to the operation of the Coolidge tube. The functioning of the indispensable element is the supplying of electric current to the Coolidge tube. In the old system the flow of electric current into and through the Coolidge tube was accomplished by two transformers, one of which supplied low current to the cathode and the other high voltage to the anode. The Coolidge tube exacts a low-voltage current to heat to incandescence the cathode end of the tube and an extremely high voltage for the anode end to generate X rays. This current, as previously observed, was supplied through the medium of two distinct transformers, one of which reduced or stepped down the flow of electric current and the other stepped it up.
The plaintiff conceived the idea of a single transformer capable of doing what had theretofore required two. He combined the mechanism into a single simple unit capable of easy transportation and thereby enabled the creation of an X-ray device susceptible to use wherever ordinary electric current was available. This he did by a simplification of the theretofore double system of transformation of current employed to generate X rays by the use of the Coolidge tube. True, his transformer is simple, and no claim is made for a basic patent of transformers. The claim is essentially a system patent, and the novelty of the invention is its adaptability to this single type of X-ray system employing the Coolidge tube. Instead of employing in separate units a winding of comparatively heavy wire to step down electric current and a winding of a large quantity of very fine wire to step it up, the plaintiff accomplished the same result by adding a few turns of coarse wire to the secondary of his step-up transformer, so that the secondary thereafter became-double in its function — i. e., the plaintiff wound around the-exceedingly fine wire used to step up the current a few turns-of coarse wire to step it down, thus producing a single unit transformer of comparatively small dimensions and weight-.. What did this accomplish? It materially reduced, if it did not entirely eliminate, the tension dangers to an attendant *452 operating the mechanism by means of the second separate step-up transformer. It simplified the wiring system theretofore employed and reduced to three in number the wires essential to operate the tube, and as a final and most important result brought into being a compact and portable device capable of easy transportation and reliably available at any place or point where electric current is generated. It made the Coolidge X-ray system available as an X-ray unit behind the lines in the war, and it enabled the use of the system as a bedside unit.
The defendant does not dispute that the Waite transformer is simple, reliable, practical, safe, portable, and sufficiently powerful, claims made for it by the inventor. Neither is it contended that its use in an X-ray system is not new. The defendant challenges the validity of the patent, insisting that it is devoid of novelty. Transformers, it is said, are old. This is true. Their manner of functioning and purpose in use were well known. This too is true. From these statements the defendant deduces the conclusion “ that if one wanted to make a transformer from the secondary of which is to be obtained a current of much lower voltage than that of the primary and also a current of much greater voltage than that of the primary, and if it was desired to keep the transformer as small as possible, it would be accomplished by winding the secondary first with the number of turns required for the low step-down voltage, using heavy wire because of the unavoidable increase in amperage * * *. Such transformers have been made and used for many years.” In other words, Waite’s application of a single and simple transformer to an X-ray generating tube of the Cool-Idge type was one suggesting itself to anyone skilled in the art and involves mechanics, not invention. A short answer is found in the demonstrated fact that, notwithstanding the Coolidge X-ray system was old, no one prior to Waite did what might have been done.
Keeping in mind that the plaintiff’s patent is limited to the single system described, and claims no novelty except as a functioning element of the system, is it impossible for one to claim invention for embodying elements old in the *453 art which, notwithstanding their known status in the scientific world, when applied to a system in a new way never theretofore adopted, enabled the use of the system to be expeditiously and safely made available for its designed creation in a way not theretofore employed ? The defendant concedes that a combination of old elements into a new machine producing a new mode of operation is patentable. What is condemned in plaintiff’s patent, both in the brief and testimony of defendant’s expert, is that the process of stepping up and stepping down electric current by the use of fine and coarse wires would in primary and secondary windings in a single transformer accomplish nothing new. The plaintiff' does assert to the contrary. The plaintiff found an X-ray system employing the wonderful invention of Doctor Coolidge; i. e., the Coolidge X-ray cathode tube. Electric-current was supplied to the tube by means of two separate- and distinct transformers, one to step down, the other to step up, the necessary voltage. It was, of course, in use and served a most important purpose in the medical and scientific world; but it was not adapted for use in the Army.. It was cumbersome and incapable of sudden removal from place to place. The wiring was complicated, the separate units employed were heavy and detached. The Army of the-United States wanted a portable system; no thought of discarding the Coolidge tube prevailed; no possibility of eliminating the factors indispensable to generate X rays. Something was to be done to preserve intact the X-ray system, but simplifying the mechanism and make it available where it had not been universally or uniformly available before. This is what the plaintiff did. He took the elements old in the art, combined them, it is true, as they had been combined before; but with his combination he secured a new and unique application of the power in a way not theretofore done or suggested. He made it possible to use an X-ray system under circumstances and in places the system existing had been excluded from. This, we think, narrow and limited as it is, was invention. It was not the invention of a transformer; it was the original idea of taking what was in the art and adapting it to a new purpose in a novel way.
*454 We need not dwell upon the beneficial resultó which followed the use of plaintiff’s device in connection with the X-ray system. It was used in the war most beneficially, and it is being used by the Army to-day. We have no doubt upon the subject of user. The defendant’s alleged modification is not sufficiently distinct to differentiate the two transformers. The plaintiff’s patent was sufficiently broad to cover all structures coming within his claim. The findings show that the defendant used the patent in suit and used it to very great advantage. The two separate transformers were discarded and the defendant has found the new Coolidge X-ray system with the plaintiff’s transformer to be one adaptable to its needs and occupying a place the old ¡system did not meet.
We do not go at length into the prior art. The findings afford an opportunity for its review. The single claim of the patentee and the acknowledged limitations' of his patent circumscribe the inquiry. The exhibits filed and considered unmistakably disclose that prior to the plaintiff’s patent the Coolidge X-ray system functioned by the use of and depended upon a single step-up transformer for supplying current to the anode and another step-down transformer for voltage to the cathode. And no exhibit appears in the record of a combined transformer suitable to or adaptable to use with a Coolidge tube X-ray system, except the patent in suit. So far as the prior art is involved, we feel confident in the assertion that no single transformer appears of record to have the windings' necessary to use in a Coolidge X-ray system.
A doubt existed as to compliance by the patentee with R. S. section 4900, as amended by the act of February 7, 1927, requiring the marking and giving notice of patents. The parties were required to furnish additional briefs upon this point. We now believe that even in the absence of markings that the United States was' fully advised and possessed knowledge of plaintiff’s patent. Doctor Shearer knew of plaintiff’s patent at the time he exhibited the patent to prospective bidders, and in addition to this he assembled the parts of the patent and wasJ fully cognizant of *455 the existence of plaintiff’s rights. The testimony does disclose that the plaintiff gave instructions to mark the patent, but it was not done. On the other hand, the representative of the successful bidder to manufacture for the Government the patent in suit does not expressly disclaim knowledge of the existence of the patent. It is impossible to conclude that any injury was done because of the absence of the markings. This' is a suit against the Government, and notice to the Government of plaintiff’s patent rights is clearly established.
Two other minor patents are declared upon. Plaintiff does not insist upon them if sustained as to patent 1343599. If patents' No. 1371011 and No. 1420395 are relied upon as augmenting damages as for infringement, we think both have been anticipated by the prior art, and that as to No. 1371011 the defendant did not use it.
The case will be remanded to the general docket in accord with the agreement of the parties, with leave granted to take such proof as the agreement provides for respecting damages. It is so ordered.
Moss, Judge; Geaham, Judge; Hay, Judge; and Campbell, Chief Justice, concur.