## T. C. WEYGANDT CO. v. VAN EMDEN.

District Court, S. D. New York.

May 14, 1930.

Munn, Anderson & Munn, of New York City (Leonard L. Kalish, of Philadelphia, Pa., of counsel), for plaintiff.

S. Pearle Tinsler, of New York City (Francis A. McGurk, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

My decision in this case is for the plaintiff. It may have a decree for a permanent injunction, and an accounting of its damages and the defendant's profits, with costs.

For the purposes of this case the validity of the Siegert patent, No. 1,576,149, and the infringement thereof by the defendant, are admitted.

That leaves the following issues only to be determined here:

1. Whether the plaintiff can maintain this action as assignee without joining the patentee Siegert.

2. Whether the machines sold by the plaintiff under the patent in suit were appropriately marked with the customary patent notice required by statute.

3. Whether the defendant had notice of the patent prior to his acts of infringement by sale in this country of two machines infringing the patent herein but made in Germany.

█ Richard Siegert of Dresden, Germany, the patentee, owned a German patent, Deutsches Reichs patent, No. 414,293, for a process and apparatus, for the manufacture of hollow objects of chocolate.

On March 9, 1926, he was granted a United States patent, No. 1,576,149, for the same process and apparatus.

The machine is manufactured in Germany by Anton Reiche of Dresden, a maker of candy machines. The United States patent was taken out to protect the machine in this country where it is used to a considerable extent by candy makers.

For upwards of thirty years the plaintiff has been agent in this country of Anton Reiche. The agency agreement seems to have been somewhat informal until July 14, 1928, when it was reduced to writing as a continuance of the agency agreement theretofore existing, and provision was made that the agency should continue for five years with privilege of cancellation at the end of that period on six months' notice by either party.

The agency agreement was, therefore, in force when this suit was brought on June 5, 1928, and still continues.

On January 15, 1927, Richard Siegert, the patentee, and owner of the United States patent, No. 1,576,149, assigned the patent, with all rights thereto appertaining, to the plaintiff for the full term thereof, subject only, however, to the continuance of the agency agreement between Anton Reiche and the plaintiff, upon the termination whereof it was provided that the patent and all rights appertaining thereto should revert back to and revest in the patentee as though the assignment of the patent had not been made.

The plaintiff, therefore, when this suit was brought, had, and has now "the whole patent, comprising the exclusive right to make use and vend the invention throughout the United States," with the right to sue infringers in its own name. Cf. Waterman v. Mackenzie, 138 U. S. 252, 253, 11 S. Ct. 334, 34 L. Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U. S. 24, 37, 43 S. Ct. 254, 67 L. Ed. 516.

The fact that its title was subject to being divested on the happening of a certain event does not affect its right to sue when that event has not happened.

There is a close analogy between the situation here and the situation of an owner of an estate in real property subject to a similar limitation. This was pointed out in Solomons v. United States, 21 Ct. Cl. 479, where Chief Justice Nott said, at page 483, of property rights in a patent: "This new form of property, the mind-work of the inventor, though its constitutional existence is now well nigh a century old, is still a novelty in the law. The wisdom of the common law gives neither maxims nor precedents to guide, and the American cases which deal with it, though numerous enough, run in a narrow, statutory groove. Though the most intangible form of property, it still, in many characteristics, is closer in analogy to real than to personal estate. Unlike personal property, it cannot be lost or found; it is not liable to casualty or destruction; it cannot pass by manual delivery. Like real property, it may be disposed of, territorially, by metes or bounds; it has its system of conveyancing by deed and registration; estates may be created in it, such as for years and in remainder; and the statutory action for infringement bears a much closer relation to an action of trespass than to an action in trover and replevin. It has, too, what the law of real property has, a system of user by license."

I hold, therefore, that there is not any defect of parties plaintiff, and that the T. C. Weygandt Company is entitled to maintain this action as the present owner of the patent in suit.

The proofs show that the defendant had been in the plaintiff's employ as salesman from 1923 to the middle of 1927, although he was on part time only from about the end of 1926. I do not believe the defendant's evidence, but, on the contrary, I am satisfied that the defendant knew of the patent in suit as early as June, 1926. Indeed, at a candy maker's convention in Chicago during that month he challenged one Eppelsheimer, who had a machine like the machine of the patent, saying to him: "What are you trying to do, borrow trouble? Don't you know that machine is patented?"

The infringement charged to the defendant is his causing to be imported and selling two machines made under the German patent, but not marked with the American patent marks.

Van Emden took an order from one Beich for one of these machines on April 26, 1927, whilst he was still partially in the plaintiff's employ. This machine was delivered on July 20, 1927. The second machine was ordered by one Loft on October 1, 1927, and delivered on October 6, 1927. The reason why such a quick delivery was possible in the second case was that the defendant had imported this second machine and had it on hand when the order from Loft came. These two machines were bought by the defendant Van Emden from a candy machinery house through whom he found he could get them in a roundabout manner from Reiche.

On May 4, 1928, the plaintiff wrote the defendant in the following terms:

"We understand that you are offering the Reiche Hollow Moulding Machine to the trade in this country.

"Please note that we have recently secured the U. S. Patent rights on this machine and that we shall sue for discontinuance of the use of this machine any firm who buys same through you or other channels."

Though this letter was somewhat inartificially worded, it served its purpose. Van Emden, who knew that he had been infringing and saw that he had been caught, stopped his infringing practices at once, and advised prospective customers with whom he had been in negotiation for the sale of the Reiche machines that they must buy of the plaintiff. Admittedly the defendant has not infringed since the letter of May 4, 1928, was received.

■ I think that the plaintiff must rely on Van Emden's actual notice of the patent in 1926, rather than on the marking of its machines. For that marking, as shown by the exhibits in evidence, does not precisely comply with the requirements of title 35, U. S. Code, § 49 (Rev. St. § 4900), as amended by the Act of February 7, 1927 (35 USCA § 49). Such marking must comply strictly with the statute in order to constitute notice to the world that the article marked is patented. For a decision on an analogous situation under the Copyright Act, tit. 17, U. S. Code, §§ 9, 18, and 19 (17 USCA §§ 9, 18, 19), see United Thrift Plan, Inc., v. National Thrift Plan, Inc. (D. C.) 34 F.(2d) 300.

■ Oil Well Improvements Co. v. Acme Foundry & Machine Co., 31 F.(2d) 898, 900, 901 (C. C. A. 8), and Waite v. United States, 63 Ct. Cl. 438, are, however, authorities for holding the defendant for damages and profits on the ground of his actual notice of the patent and knowledge of the fact that his importation and sale of the two machines above referred to was an infringement thereof. In the Oil Well Improvements Company Case, just cited, the Circuit Court of Appeals for the Eighth Circuit summarized the situation as to notice in patent suits as follows, at page 901: "It is equally true, as impliedly conceded by appellee, that notice may be given otherwise than by the statutory method. The statutory method is merely supplemental—amounting to 'legal' notice, analogous to that of recordation statutes. The essential matter, where the statutory method is not used to supply the deficiency, is actual notice to the infringer that the product of the patentee is patented. Here the master and the court concurred in finding the existence of this actual notice. The evidence not only justifies, but it compels such a result. This actual notice existed before appellee began any manufacture or sale of the infringing device. Therefore it is liable for profits and damages, covering the entire period of the infringement."

Settle decree on five days' notice.