**JOHN L. RIE, INC.**

v.

**SHELLY BROS., INC.**

**Civ. A. No. 70–505.**

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1973.

Jerome Bauer, Mineola, N. Y., Stanley H. Cohen, Philadelphia, Pa., for plaintiff.

Elliot A. Salter, Providence, R. I., George J. Harding, 3rd, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW

GORBEY, District Judge.

This is an action for patent infringement brought pursuant to 28 U.S.C. § 1338, seeking an injunction against further infringement and seeking damages for the past infringement. Plaintiff is the assignee of Patent No. 3,002,240, granted October 3, 1961, to Maxime Laguerre, plaintiff's assignor. The device is called a closure device and is used in sealing plastic bags. Defendant is a candy manufacturer, who plaintiff alleges was knowingly using an infringing device supplied to it by Union Paper Company, of Providence, Rhode Island.

The case was tried before this court without a jury on September 6th and 7th, 1973. The following are our findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. United States Letters Patent No. 3,002,240 were granted for a closure device to Maxime Laguerre on October 3, 1961.

2. The Laguerre patent was assigned to plaintiff John L. Rie, Inc. by written assignment dated November 12, 1968.

3. Said assignment reads in pertinent part as follows:

Now, therefore, be it known that for and in consideration of the sum of one and 00/100 ($1.00) Dollar in hand paid and other good and valuable consideration, the receipt of which is hereby acknowledged, Maxime Laguerre has sold, assigned, transferred and set over, and by these presents does sell, assign, transfer and set over unto the said John L. Rie, Inc., the Letters Patent aforesaid; the same to be held and enjoyed by the said John L. Rie, Inc., its successors and assigns to the end of the term or terms in which said Letters Patent are granted or may be reissued, continued or extended, as fully and entirely as the same would have been held and enjoyed by the said Maxime Laguerre had this assignment and sale not been made.

4. John L. Rie, Inc. was merged into Cresthill Industries, Inc., on August 25, 1972; and therefore the present action is being continued under the name of John L. Rie, Division of Cresthill Industries, Inc., the merged corporation.

5. Prior to the written assignment, dated November 12, 1968, plaintiff manufactured and sold devices pursuant to the patent in suit under an oral understanding with Maxime Laguerre.

6. On or about August 30, 1961, in response to a contact made by defendant Shelly Bros., Inc., plaintiff forwarded to defendant samples of the patented closure device with an explanation thereof.

7. In or about September, 1964, plaintiff began to sell to defendant Shelly Bros., Inc., closure devices constructed according to the teaching of the patent in suit.

8. From September, 1964 to 1967, plaintiff continued to sell to defendant Shelly Bros., Inc. the patented closure device.

9. In or about July, 1966, defendant Shelly Bros., Inc. was contacted by Union Paper Company (Union), of 10 Admiral Street, Providence, Rhode Island, to sell to defendant duplicate copies (hereinafter called "Original Construction") of the closure devices of the patent in suit.

10. Pursuant to the foregoing contact, defendant Shelly Bros., Inc. received shipments of the "Original Construction" devices on two occasions. The invoices for these shipments are dated August 5, 1966 and December 1, 1966.

11. During the same period defendant Shelly Bros., Inc. continued to purchase patented closure devices from plaintiff.

12. In February, 1967, defendant Shelly Bros., Inc. was visited by Mr. John L. Rie, Jr., of plaintiff, and was told that defendant would honor plaintiff's patent (the patent in suit).

13. This meeting was confirmed by letter dated February 20, 1967, from Mr. John L. Rie, Jr. to Shelly Bros., Inc. This letter contained notice to the defendants that the devices in question were patented and that the number of said patent was 3,002,240.

14. Defendant Shelly Bros., Inc. thereafter notified Union of the patent in suit and of the claim by plaintiffs that the Union device infringed on the patent in suit.

15. Pursuant to said notice, Union had their supplier make certain changes in the construction of the device in an effort to avoid infringement of the patent in suit.

16. Defendant Shelly Bros., Inc. received their first shipment of this altered device ("Altered Construction") on February 12, 1968.

17. Sometime in 1968, defendant Shelly Bros., Inc. ceased purchasing closure devices from the plaintiff.

18. Defendant Shelly Bros., Inc. continued to use the "Altered Construction" closure device indiscriminately with the patented closure devices it had obtained from plaintiff John L. Rie, Inc.

19. The "Altered Construction" closure device did not improve the closure devices or add something definitive to the state of the art.

20. The "Altered Construction" closure device did not perform as well as the patented devices obtained from the plaintiff, causing defendant Shelly Bros., Inc. to receive complaints about bags opening, which complaints defendant did not receive while using either the devices obtained from plaintiff or the "Original Construction" devices.

21. Plaintiff's patented devices came in two pieces, a bridle member and a collar member. During the period in question, plaintiff's device was available in three sizes, small, medium and large.

22. The notice "PAT PEND." was applied directly to the bridle member of plaintiff's patented bag closure prior to the issuance of plaintiff's patent.

23. After issuance of plaintiff's patent on October 3, 1961, and at least through 1967, plaintiff's patented bag closures continued to carry on the bridle member the notice, "PAT PEND."

24. Plaintiff's devices also carried the following inscription on the bridle member: "JOHN L. RIE, INC. YONKERS, N. Y."

25. Both of these inscriptions were clearly visible on plaintiff's large and medium size clips and were easily visible to the naked eye upon close inspection of plaintiff's smallest size clips.

26. The carton in which plaintiff shipped these clips in lots of 5,000 contained the following inscription: "KIS-CO BIP PLASTICLIPS U.S. PATENT #3,002,240".

27. Claims 1 and 2 of the patent in suit include as a positive element thereof "a plurality of angularly sloped vertically pointed teeth" shown at 22 in the drawings of the patent.

28. Claims 1 and 2 of the patent in suit include a positive element thereof "horizontally disposed ridge means of said bridle and collar interior" shown at 20 and 36, respectively in the drawings of the patent.

29. The patent in suit and the file history of same clearly recite that the function of the teeth (22) and the cooperating ridges (20 and 36) is to more securely lock the bent-over top of the bag while the collar is forced downward.

30. In defendant's "Altered Construction", the teeth (22) have been completely eliminated leaving a smooth ridge in its place with nothing equivalent to teeth being substituted therefor.

31. In defendant's "Altered Construction", the ridges (20 and 36) have been completely eliminated and no equivalent structures have been substituted therefor.

32. Plaintiff's patented closure device does not constitute a new art, but was merely an advancement in prior art.

33. During the prosecution of the patent in suit before the U.S. Patent Office, certain claims were originally presented which did not specifically recite the pointed teeth (22) or the horizontally disposed ridge means (20 and 36), but said claims were rejected as failing to patentably define over the prior art. In addition, certain claims were submitted which contained only the teeth (22) or the ridge means (20 and 36) and these also were rejected as failing to patentably define over prior art.

34. Not until one claim was submitted containing the general description of the device and the description of various elements including the teeth (22) and the ridge means (20 and 36) was the patent in suit granted.

35. The "Original Construction" closure devices purchased by defendant Shelly Bros., Inc. from Union read literally (i. e. infringed) upon the claims of the Laguerre Patent No. 3,002,240.

## DISCUSSION

### INFRINGEMENT

Defendant has admitted that the "Original Construction" device purchased from Union read literally on the claims of the patent in suit and therefore was an infringement on that patent. Also, defendant does not contest the validity of the patent in suit. Therefore, on the issue of infringement we must only decide whether defendant's "Altered Construction" device infringed on the patent in suit.

In support of its claim for infringement, the plaintiff urges this court to apply the "Doctrine of Equivalents". This doctrine is discussed by the Supreme Court in the case of Graver Tank and Manufacturing Co., Inc., et al. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), in which the Court stated:

The essence of the doctrine is that one may not practice a fraud on a patent. Originating almost a century ago in the case of Winans v. Denmead, 15 How. 330, 14 L.Ed. 717, it has been consistently applied by this Court and the lower federal courts, and continues today ready and available for utilization when the proper circumstances for its application arise. "To temper unsparing logic and prevent an infringer from stealing the benefit of the invention." A patentee may invoke this doctrine to proceed against the producer of a device "if it performs substantially the same way to obtain the same result." Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147. The theory on which it is founded is that "if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935.

As to the extent to which the doctrine will be applied, the Court in Graver Tank, *supra*, stated:

The doctrine operates not only in favor of the patentee of a pioneer or primary invention but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, Imhauser v. Buerk, 101 U.S. 647, 655, 25 L.Ed. 945, although the area of equivalence may vary under the circumstances. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414–415, 28 S.Ct. 748, 749, 52 L.Ed. 1122.

The Supreme Court in the Continental Paper Bag Co. case made it clear that the application of the doctrine varies with the circumstances. The Court stated at page 415, 28 S.Ct. at page 749:

It is well settled that a greater degree of liberality and a wider range of equivalents are permitted where a patent is of a pioneer character than when the invention is simply an improvement may be the last and successful step, in the art theretofore partially developed by other inventors in the same field.

■ In the case at bar, we have determined that the patent in suit is not of a pioneer nature in that it was not a new art but only a new variation upon existing art,[1] therefore our application of the "Doctrine of Equivalents" will be narrow.

■ Defendant contends that the doctrine does not apply since the "Altered Construction" device omitted three of the elements of the patent in suit; namely, the teeth (22) and the ridge members (20 and 36). Plaintiff claims that in place of the teeth (22), defendant has substituted a smooth edge, and in place

---

1. See our finding of fact no. 32.

of the ridge members (20 and 36), defendant has substituted smooth surfaces, and that these are substantially equivalent to the design of the patent in suit. We do not agree.

With respect to these items, claim no. 1 of the plaintiff's patent reads in pertinent part as follows:

. . . a seat at the lower portion of the joined legs having a plurality of angularly sloped vertically pointed teeth . . . horizontally disposed ridge means on said bridle and collar interior and cooperable to lock the bag end there between to prevent the removal of said bridle member from said collar opening . . .

From the reading of the claim, it is clear that plaintiff is claiming the teeth (22) and the ridge means (20 and 36) as a part of his claim in the patent in suit. The law is clear that every element of a patent claim is deemed material and that omission of one avoids infringement. Etten v. Kauffman, 121 F.2d 137 (3d Cir. 1941). Since we have decided that the application of the "Doctrine of Equivalents" will be limited with respect to the patent in suit, the issue revolves around the question of whether we consider that the removal of teeth and ridges was an elimination, or whether the smooth surfaces in defendant's "Altered Construction" were a substitute for these teeth and ridges. We are of the opinion that the teeth and ridges claimed in plaintiff's patent served a material purpose (i. e. to hold the bag more securely). Their removal caused the defendants to receive complaints indicating that without the teeth (22) and ridge means (20 and 36) the closure device was not as effective. In addition, businessmen do not ordinarily go to additional expense to provide useless features on a device. Accordingly, defendant's elimination of these teeth and ridges constituted the elimination of a material element of the patent in suit and in doing so, defendant has avoided infringement of the patent in suit.

Even if we were to hold that the smooth surfaces in defendant's "Altered Construction" device were substitutions for the teeth and ridge means in the patent in suit, the "Doctrine of Equivalents" would still not be applicable, for plaintiff would be barred from asserting the doctrine as to the elements in question in this suit by the doctrine of "File-wrapper Estoppel". This doctrine was discussed in a recent Third Circuit case, Trio-Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66 at 75 (1972) in which the court stated:

The doctrine of file-wrapper estoppel provides that where a patentee abandons or redrafts a claim more narrowly to avoid rejection on the basis of prior art, then the substance of the claim as originally drafted that was thereby excluded cannot be recaptured by resort of the doctrine of equivalents. (Citations omitted) The doctrine is based on the theory that the prior art is either in the public domain or already patented so that the patentee may not claim it as part of his invention. By redrafting or abandoning a claim in the face of a prior art rejection, the patentee is conceding that he has not invented what he thereby disclaims and therefore will not be heard to assert, at a later date, what he disclaimed as his invention. Accordingly, for "file-wrapper estoppel" to become operable, it is necessary, at the least, that a claim has been narrowed to avoid the prior art.

In the case at bar, the file from the patent office discloses that the individual elements claimed in claims 4 and 5 of plaintiff's original application (teeth and ridge means) were not patentable by themselves over prior art. It was not until plaintiff combined all of the elements of his device, including the teeth and ridge means in question in this suit, was he able to claim a patentable device; and, at that, this claim was initially rejected by the patent office and was not granted until after considerable

discussion ensued about the extent of the prior art.[2]

Accordingly, for plaintiff to argue that the elements in question here were not material and that the combination of them in the entire device is not essential to his patent is clearly contrary to the record of the proceedings before the patent office; and, as such, plaintiff is barred by the doctrine of "File-wrapper Estoppel" from asserting the "Doctrine of Equivalents" against one who is now using a device which does not contain these elements.

Accordingly, we hold that defendant's "Altered Construction" device does not infringe Patent No. 3,002,240.

## DAMAGES

Since defendant has admitted that the "Original Construction" device infringed on the patent in suit, we must determine what, if any, damages plaintiff is entitled to.

■ First, defendant asserts that if there was any infringement for which the plaintiff has the right to sue, plaintiff is not entitled to any damages for such infringement, because he has failed to comply with the marking requirements in the patent laws (35 U.S.C. § 287). This section provides as follows:

Patentees and persons making or selling any patented article for or under them, may give notice to the public

that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat." together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it or to the package wherein one or more of them is contained a label containing a like notice. In the event of failure to so mark, no damages shall be recovered by the patentee in any action for infringement except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

In response to this, plaintiff claims that the devices in question were too small to clearly mark and that the marking on the cartons in which the devices were shipped was sufficient to satisfy the requirements of § 287. We cannot agree with this proposition. An inspection of the devices reveals that the bridle members are marked "PAT PEND." and also that they contain the inscription "JOHN L. RIE, INC. YONKERS, N. Y." Even on the smallest device, these inscriptions are legible. Plaintiff has not put forth any arguments as to how the inscription "PAT PEND." differs from a required inscription such as "PAT 3002204" or

2. The initial application in the patent in suit dated October 16, 1959, contained seven claims. Claim 4 of this application read: "The combination of claim 2, said seat including a plurality of angularly sloped pointed gripping teeth." Claim 2 was a general description of the device without mention of these teeth. Claim 5 of this application read: "The combination of claim 2, wherein said bridle member contains substantially horizontal ridge means and ridge means in the hollow of said collar member, said ridge means cooperating to lock the bag end there between." Again, the general description in claim 2 did not contain mention of these ridge means. All of these claims were rejected by the patent office on April 27, 1960, as being readable on prior art. On October 7, 1960, an amendment was submitted making certain changes to claims 1, 2, 4 and 7, which are not

material here and adding an additional claim 8. Claim 8 reads the same as claim 1 of the patent in suit. The patent office, on February 21, 1961, again rejected claims 1 through 7 and the new claim 8 as being readable on prior art. On May 31, 1961, another amendment was submitted. This amendment cancelled claims 1 through 7; retained the claim no. 8 and added an additional claim no. 9, which reads: "A detachable closure device as in claim 8, said stop means being a non-deformably engageably by said collar ridge." This is the same as claim no. 2 of the patent in suit. As a result of this amendment, Patent No. 3,002,240 was issued to Maxime Laguerre on October 3, 1961, containing two claims (designated claims 1 and 2, but referred to as claims 8 and 9 in the application).

why such inscription could not be placed on the collar member.

The statute is clear that only when "from the character of the article this cannot be done" is affixing the required marking on the package acceptable; and the law is clear that these marking provisions *must be strictly complied with.* (Emphasis added) T. C. Weygandt Co. v. Van Emden, 40 F.2d 938 (S.D.N.Y. 1930). Plaintiff has put forth no plausible reason why the proper marking could not have been placed on this device.

■ Accordingly, we hold that plaintiff has not complied with § 287 of the patent laws, and thus, is not entitled to recover any damages for infringement prior to the point where it can show that defendant Shelly Bros., Inc. had actual notice of the patent in suit. This notice is contained in the letter dated February 22, 1967 from John L. Rie, Jr. to Shelly Bros., Inc. Accordingly, plaintiff cannot recover any damages for infringement occurring prior to that date and the record does not contain any evidence of infringement subsequent to that date; the last sale being dated December 1, 1966.

In addition, even if there was any infringement occurring after February 22, 1967, defendant claims that plaintiff is not entitled to any relief for infringement prior to the November 12, 1968 assignment of the patent in suit from the original inventor, Maxime Laguerre, to the plaintiff.[3]

■■ A mere assignment of a patent which does not also expressly assign the right to recover damages or profits arising from infringement of such patent occurring before such assignment, does not transfer to the assignee the right to recover such damages or profits. Herman v. Detroit Shipbuilding Co., 295 F. 423 (E.D.Mich.1924). It is clear from a reading of the assignment in this case that the right to sue for past infringement was not specifically granted. Plaintiff urges this court to accept parol evidence of the intent of the parties to grant such power. To do so would be a clear violation of the parol of evidence rule. The document in question, in light of the case law on patent assignments, is clear and unambiguous as to its effect. Also, the intention of the parties is irrelevant. Emerson, et al. v. Hubbard, et al., 34 F. 327 (C.C.W.D.Pa.1888). Accordingly, plaintiff's claim that because defendant had not raised this issue until the preparation of the final pretrial order approximately two weeks before trial, that he was prejudiced in not being able to prepare evidence to show the meaning and intent of the assignment is without merit. In addition, plaintiff asserts that he should have been given the opportunity to amend its pleadings pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to reflect its prior exclusive license under the patent in suit. Unfortunately, the plaintiff never asked to amend his pleadings. It is difficult for the court to act upon a request that has not been made.

■ Even assuming that plaintiff had properly pleaded his status as a licensee and would have been able to establish it at trial, he would still not have the right to bring a suit for infringement under the patent laws of the United States without joining the actual holder of the patent, Maxime Laguerre. See Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

Accordingly, we hold that plaintiff is not entitled to any relief for infringements occurring prior to the assignment dated November 12, 1968.

Since plaintiff has not shown any infringement which occurred after the November 12, 1968 assignment, plaintiff is not entitled to any damages for any infringement as a result of the "Original Construction" device. Accordingly, we make the following conclusions of law.

CONCLUSIONS OF LAW

■ 1. U.S. Patent No. 3,002,240 issued on October 3, 1961, to Maxime Laguerre is valid.

---

8. See our finding of fact no. 3.

2. The "Original Construction" device purchased by defendant Shelly Bros. Inc. in 1966, infringed the said patent.

3. The "Altered Construction" device purchased by defendant Shelly Bros., Inc. beginning in 1968 does not infringe Patent No. 3,002,240.

4. The plaintiff John L. Rie, Inc. has not complied with the marking provisions of 35 U.S.C. § 287, and thus, is not entitled to recover damages for infringement which occurred prior to the date of actual notice to the defendant of the said patent, this date being February 22, 1967.

5. The plaintiff John L. Rie, Inc. is the assignee of the patent in suit by way of assignment dated November 12, 1968. Said assignment does not grant the plaintiff the right to sue for infringements occurring prior to the date of said assignment.

6. The plaintiff John L. Rie, Inc. has not proved any infringement of the patent in suit for which he is entitled to recover damages.